OPINION OF THE COURT
Chief Judge Cooke.
The operator of a motor vehicle, who failed timely to ingest a dosage of medication, suffered an epileptic seizure and his vehicle careened into an excavation site where a gas main was being installed beneath the street surface. The automobile crashed through a single wooden horse-type barricade put in place by the contractor and struck an employee of a subcontractor, who was propelled into the air. Upon landing the employee was splattered by boiling liquid enamel from a kettle also struck by the vehicl'e. Principally at issue on this appeal is whether plaintiffs, the employee and his wife, failed to establish as a matter of law that the contractor’s inadequate safety precautions on the work site were the proximate cause of the accident.
Supreme Court, Queens County, rendered an order, upon a jury verdict, in favor of plaintiffs on the issue of liability. The Appellate Division, with one dissent, affirmed, and granted defendant Felix Contracting Corporation leave to appeal to this court upon a certified question.
The order of the Appellate Division should be affirmed. As a general rule, the question of proximate cause is to be decided by the finder of fact, aided by appropriate instructions. There is no basis on this record for concluding, as a matter of law, that a superseding cause or other factor intervened to break the nexus between defendant’s negligence and plaintiff’s injury.
During the fall of 1973 defendant Felix Contracting Corporation was performing a contract to install an underground gas main in the City of Mount Vernon for defendant Con Edison.[1] Bayside Pipe Coaters, plaintiff Harold Derdiarian’s employer, was engaged as a subcontractor to seal the gas main.
*313 On the afternoon of November 21, 1973, defendant James Dickens suffered an epileptic seizure and lost consciousness, allowing his vehicle to careen into the work site and strike plaintiff with such force as to throw him into the air. When plaintiff landed, he was splattered over his face, head and body with 400 degree boiling hot liquid enamel from a kettle struck by the automobile. The enamel was used in connection with sealing the gas main. Although plaintiff’s body ignited into a fire ball, he miraculously survived the incident.
At trial, plaintiff’s theory was that defendant Felix had negligently failed to take adequate measures to insure the safety of workers on the excavation site. Plaintiff’s evidence indicates that the accident occurred on Oak Street, a two-lane, east-west roadway. The excavation was located in the eastbound lane, and ran from approximately one foot south of the center line to within 2 or 3 feet of the curb. When plaintiff arrived on the site, he was instructed by Felix’ foreman to park his truck on the west side of the excavation, parallel to the curb. As a result, there was a gap of some IVi feet between the side of the truck and the curb line. Derdiarian testified that he made a request to park his truck on the east side of the hole, so he could set up the kettle away from the oncoming eastbound traffic. The Felix foreman instructed him to leave his truck where it was, and plaintiff then put the kettle near the curb, on the west side of the excavation.
James Dickens was driving eastbound on Oak Street when he suffered a seizure and lost consciousness. Dickens was under treatment for epilepsy and had neglected to take his medication at the proper time. His car crashed through a single wooden horse-type barricade that was set up on the west side of the excavation site. As it passed through the site, the vehicle struck the kettle containing the enamel, as well as the plaintiff, resulting in plaintiff’s injuries.
To support his claim of an unsafe work site, plaintiff called as a witness Lawrence Lawton, an expert in traffic safety. According to Lawton, the usual and accepted method of safeguarding the workers is to erect a barrier around the excavation. Such a barrier, consisting of a truck, a piece of heavy equipment or a pile of dirt, would keep a car out of the excavation and protect workers from oncoming traffic. The expert testified that the barrier should cover the entire width of the excavation. He also stated that there should have been two flagmen present, rather than one, and that warning signs *314 should have been posted advising motorists that there was only one lane of traffic and that there was a flagman ahead.
Following receipt of the evidence, the trial court charged the jury, among other things, that it could consider, as some evidence of negligence, the violation of a Mount Vernon ordinance. The ordinance imposed upon a construction "permittee” certain safety duties.[2] The court charged that Con Ed was the permittee "and by contract Felix assumed any obligations under this ordinance that Con Ed had.” Felix objected to "the Court charging that by contract Felix assumed any obligation under the ordinance that Consolidated Edison had.” The jury found for plaintiff, apportioning liability at 55% for Felix, 35% for Dickens and 10% for Con Ed. Defendant Felix now argues that plaintiff was injured in a freakish accident, brought about solely by defendant Dickens’ negligence, and therefore there was no causal link, as a matter of law, between Felix’ breach of duty and plaintiff’s injuries.[3]
The concept of proximate cause, or more appropriately legal cause, has proven to be an elusive one, incapable of being precisely defined to cover all situations (see, e.g., Pagan v Goldberger, 51 AD2d 508, 509 [Hopkins, Acting P. J.]; Prosser, Law of Torts [4th ed], § 42, p 249; see, also, 1 Shearman & Redfield, Negligence, § 35). This is, in part, because the concept stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct (e.g., Ventricelli v Kinney System Rent A Car, 45 NY2d 950, 952; Palsgraf v Long Is. R. R. Co., 248 NY 339, 352 [Andrews, J., dissenting]). Depending upon the nature of the case, a variety of factors may be relevant in assessing legal *315 cause. Given the unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause, once the court has been satisfied that a prima facie case has been established (see, e.g., Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 520, 521; Sheehan v City of New York, 40 NY2d 496, 502, 503; Kingsland v Erie County Agric. Soc., 298 NY 409, 424, 427). To carry the burden of proving a prima facie case, the plaintiff must generally show that the defendant’s negligence was a substantial cause of the events which produced the injury (Nallan v Helmsley-Spear, Inc., supra, at p 520; Restatement, Torts 2d, § 431). Plaintiff need not demonstrate, however, that the precise manner in which the accident happened, or the extent of injuries, was foreseeable (Restatemeirij Torts 2d, § 435, subd 2).
h h-ere the acts of a third person intervene between the defendant’s conduct and the plaintiff’s injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created Sbj( the defendant’s negligence (see Parvi v City of Kingston, 41 NY2d 553, 560; Restatement, Torts 449; Prosser, Law of Torts, § 44). If the intervening act i, extraordinary under the circumstances, not foreseeable in tu normal course of events, or independent of or far removed rom the defendant’s it may well be a superseding act which breaks the causal nexus (see, e.g., Martinez v Lazaroff, 48 NY2d 819, 820; Ventricelli v Kinney System Rent A Car, 45 NY2d 950, 952, supra; Rivera v City of New York, 11 NY2d 856). Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve.
There are certain instances, tb be sure, where only one conclusion may be drawn from* the established facts and where the question of legal cause ’(nay be decided as a matter of law. Those cases generally involve independent intervening acts which operate upon but d J not flow from the original negligence. Thus, for instance, we have held that where an automobile lessor negligently supplies a car with a defective trunk lid, it is not liable to the lessee who, while stopped to repair the tiunk, was injured by the negligent driving of a third party (Ventricelli v Kinney System Rent A Car, supra). Although the renter’s negligence undoubtedly served to place *316 the injured, party at the site of the accident, the intervening act was divorced from and not the foreseeable risk associated with the original negligence. And the injuries were different in kind than those which would have normally been expected from a defective trunk. In short, the negligence of the renter merely furnished the occasion for an unrelated act to cause injuries not ordinarily anticipated (see, also, Martinez v Lazaroff, supra).
By contrast, in the present case, we cannot say as a matter of law that defendant Dickens’ negligence was a superseding cause which interrupted the link between Felix’ negligence and plaintiff’s injuries. From the evidence in the record, the jury could have found that Felix negligently failed to-safeguard the excavation site. A prime hazard associated witih such dereliction is the possibility that a driver will negligently enter the work site and cause injury to a worker. That the driver was negligent, or even reckless, does not insulate Felix from liability (see Lopes v Adams, 30 NY2d 499, affg 37 AD2d 610; Restatement, Torts 2d, § 449). Nw is it decisive that the driver lost control of' the vehicle through a negligent failure to take medication, rather”"tlm^axlriving' mistake (see, e.g., Lopes v Adams, supra). The praise manner of the event need ^not be anticipated. The findr °f fact could have concluded that-the foreseeable, normal and natural result of the risk created by Felix was the injury of a worker by a car entering the improperly protected work area. An intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent.
In a similar vein, plaintiff’s act of placing the kettle on the west side of the excavation does not, as a matter of law, absolve defendant Felix of responsibility.[4] Serious injury, or even death, was a foreseeable consequence of a vehicle crashing through the work area.; The injury could have occurred in numerous ways, ranging fifom a worker being directly struck by the car to the car hitting- an object that injures the worker. Placement of the kettle, or &ny object in the work area, could affect how the accident occurs and the extent of injuries. That defendant could not anticipate the precise manner of the *317 accident or the exact extent of injuries, however, does not preclude liability as a matter of law where the general risk and character of injuries are foreseeable.
Felix also urges that the trial court erred in charging the jury that a violation of the Mount Vernon ordinance could be considered as some evidence of negligence. According to Felix, the ordinance was designed to protect the general public and created no duty to workers on the site. Whatever the merit of his contention, it is beyond our review, for Felix failed to raise it before the trial court. The only objection to this charge related to Felix’ argument that it had not contractually assumed any duty imposed by the ordinance upon Con Ed.
Finally, we perceive no error in the conclusion that Felix is contractually obligated to indemnify Con Ed, even though Con Ed itself was found to be negligent (see, e.g., Margolin v New York Life Ins. Co., 32 NY2d 149).
For the foregoing reasons, the order of the Appellate Division should be affirmed, v/ith costs. The certified question is answered in the affirmative.
Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur; Judge Fuchsberg taking no part.
Order affirmed, etc.

. Since plaintiff has prevailed on the liability issue, and the only issue is whether the evidence was insufficient as a matter of law, the evidence must now be viewed in the light most favorable to the plaintiff.

. The pertinent portions of the ordinance provide:
"The permittee shall erect and maintain suitable barricades and fences around all of his work while excavation or other work is in progress and shall arrange his work in such a manner as to cause a minimum of inconvenience and delay to vehicular and pedestrian traffic.
"Where free flow of traffic is interfered with, the permittee shall designate competent persons to direct and expedite traffic by means of lights or flags.
"Unless otherwise authorized by the Commissioner, vehicular traffic shall be maintained at all times during the progress of the work being performed under the permit.
"Safety shall be provided with suitable barricades and lights throughout project, and security supplied where necessary.”

. Defendant Con Ed also claims to appeal from the order of the Appellate Division. However, Con Ed’s appeal as of right was previously dismissed by this court (48 NY2d 755). Inasmuch as Con Ed has not obtained leave to appeal from the Appellate Division, it is before this court as a respondent only.

. Plaintiff testified that a Felix foreman had d),-aecc<a ;,Vm to park his truck on the west side of the excavation. From this, and other related testimony, the jury could have concluded that Felix effectively dictated the location of the kettle, obviating any question of plaintiff’s own conduct breaking the causal nexus.