■ BERNARD KNICKERBOCKER et al., Appellants, v MAURICE DE MARS, JR., et al., Respondents.—Weiss, J. Appeals from two orders of the Supreme Court (Mercure, J.), entered May 5, 1987 and August 28, 1987 in Warren County, which granted defendants' motions for summary judgment dismissing the complaint.

This is an action to recover damages for personal injuries sustained by plaintiff Bernard Knickerbocker[1] (hereinafter

---

1. A derivative action was commenced on behalf of plaintiff's wife.

plaintiff) in an accident on June 25, 1982 while he was attempting to manually disengage a power-take-off unit (hereinafter PTO) installed on a 1977 Ford logging truck.[2] Since April 1982, plaintiff had been transporting logs as an independent logging contractor working for defendant Maurice De Mars, Jr., the owner of the truck. Defendant Loggers Equipment Sales, Inc. sold the truck to De Mars as a used vehicle, and defendant Dana Corporation designed and manufactured the PTO.

As gleaned from plaintiff's pretrial deposition, he had been a truck driver since 1969 and was experienced in the maintenance and repair of trucks. He had even installed three or four PTOs of the same type as the one on De Mars' truck and was familiar with the PTO manual. Plaintiff, who kept the truck at his home and serviced it weekly, experienced difficulty with the PTO several times and had so advised De Mars. The evening before the accident, plaintiff advised De Mars of a kink in the PTO cable. De Mars ostensibly instructed him to replace the cable first thing in the morning, although plaintiff indicates that he had the option of fixing it at any convenient point during the day.

The next morning, plaintiff picked up a load of logs at a mill yard without having first replaced the cable. At this juncture, plaintiff discovered that the cable had snapped and proceeded to temporarily correct the problem. In so doing, he first placed the transmission in neutral, applied the parking brake and turned off the engine. He then crawled underneath and manually disengaged the PTO using a hand wrench, all without incident. At the very next stop, he re-engaged the PTO in order to unload the truck in the same manner previously described. After the truck was unloaded, plaintiff drove to a level area in the mill yard to again manually disengage the PTO. He placed the transmission in what he believed to be neutral, applied the maxi-brakes (a brake system secondary to the air brakes) and shut the engine off. Notably, plaintiff knew the maxi-brakes were not working properly, having made adjustments twice daily during the preceding week. He crawled underneath the truck and manually disengaged the PTO using a hand wrench. To verify the disengagement, plaintiff generally would come out from beneath the truck,

---

2. A PTO is attached in the undercarriage of a vehicle to the main transmission and is designed to pick up engine power through rotation and transfer it to another piece of equipment. The PTO input gear meshes with one of the gears in the vehicle's transmission. The PTO was used to assist in the loading and unloading of logs and pulp.

start the engine and then return to visually observe whether the PTO shaft was turning. This time, however, because he was in a hurry to get to his next stop, he remained under the truck and called to his 17-year-old stepson to start the engine. When the boy started the engine, the truck lurched backwards approximately three feet and ran over plaintiff's left leg inflicting grievous injuries, eventually leading to amputation. Following pretrial discovery, Supreme Court granted all three defendants summary judgment dismissing the complaint, finding that plaintiff's own actions were the proximate cause of his injuries as a matter of law. Plaintiff has appealed.

We affirm. In an instance, as here, where an intervening act contributes to a plaintiff's injuries, "liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence" *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315; *see, Boltax v Joy Day Camp,* 67 NY2d 617, 620). Even accepting the various allegations of negligence posited against each defendant, we agree with Supreme Court that plaintiff's own conduct was so extraordinary under the circumstances as to absolve defendants of liability *(see, Boltax v Joy Day Camp, supra; Smith v Stark,* 67 NY2d 693; *Nikolaus v State of New York,* 129 AD2d 865, 866, *appeal dismissed* 70 NY2d 728, *lv denied* 70 NY2d 616).

The pivotal point here is not that plaintiff attempted to manually disengage the PTO from beneath the vehicle. This type of repair effort, however ill-advised, is arguably foreseeable. However, it is not reasonably foreseeable for plaintiff to have directed his stepson to start the ignition while he remained beneath the truck, particularly since he was well aware that the maxi-brakes were not properly functioning and he had not otherwise braced the wheels. Plaintiff's attempt to distinguish this case from *Boltax v Joy Day Camp (supra),* relied on by Supreme Court, as a complex products liability matter is not persuasive. Plaintiff's deposition testimony confirms that he was an experienced truck driver, who routinely maintained the vehicles he drove, and was well versed in the mechanics of the PTO *(see, Smith v Stark, supra,* at 694). Plaintiff's further suggestion that he was required to check underneath the truck to confirm whether the PTO was disengaged misses the point. Plaintiff's own testimony confirms that he could make this observation from the side of the vehicle. Moreover, plaintiff could readily have removed himself from beneath the truck, started the engine and then checked underneath to see if the PTO was properly disengaged. Indeed, this

is precisely the procedure he utilized earlier in the day. This is not an instance where plaintiff.simply forgot to take protective measures *(cf., Baker v Sportservice Corp.,* 142 AD2d 991). In the final analysis, Supreme Court properly determined, as a matter of law, that plaintiff's own actions constituted an unforeseeable, superseding cause absolving defendants of liability *(see, Boltax v Joy Day Camp, supra,* at 620; *Scott v Mead,* 132 AD2d 755; *cf., Kush v City of Buffalo,* 59 NY2d 26, 32-33). The fact that Supreme Court mistakenly observed that "the engine had to be turned off in order to disengage the PTO" does not, as plaintiff suggests, require a contrary conclusion.

Orders affirmed, without costs. Mahoney, P. J., Kane,. Casey, Weiss and Levine, JJ., concur.