Frank PARSONS, Plaintiff–Appellant,

v.

HONEYWELL, INCORPORATED;
Northern Propane Gas Company,
Defendants–Appellees,

HONEYWELL, INCORPORATED, Third
Party Plaintiff–Appellant,

v.

John T. ROWE, Sr. and Rosemary
Rowe, Third Party
Defendants–Appellees,

NORTHERN PROPANE GAS
COMPANY, Third Party
Plaintiff–Appellant,

v.

John T. ROWE, Sr.; Rosemary Rowe;
Mileage Master Center of Rochester,
Inc.; Shayoung Contracting, Corp.;
and Richard Thomas Connolly, Third
Party Defendants–Appellees.

Nos. 1151, 1197 and 1187.
Dockets 90–7785, 90–7943 and 90–7945.

United States Court of Appeals,
Second Circuit.

Argued March 13, 1991.

Decided March 29, 1991.

**902**

Frederick C. Riester (Kirk M. Lewis, and DeGraff, Foy, Conway, Holt–Harris & Mealey, Albany, N.Y., on the brief), for plaintiff-appellant.

George W. Flynn, Minneapolis, Minn. (John C. Herbert, Richard E. Alexander, and Harter, Secrest & Emery, Rochester, N.Y., and Cosgrave, Flynn, Gaskins & Haskill, Minneapolis, Minn., on the brief), for defendant-appellee/third party plaintiff-appellant Honeywell, Inc.

John J. Considine, Jr. (Sutton, DeLeeuw, Clark & Darcy, Pittsford, N.Y., on the brief), for defendant-appellee/third party plaintiff-appellant Northern Propane Gas Co.

Cheryl A. Heller (Audrey P. Peartree, and Culley, Marks, Tanenbaum, Reifsteck, Potter & Capell, Rochester, N.Y., on the brief), for third party defendant-appellee Mileage Master Center of Rochester, Inc.

Walter R. Pacer, Jr. (Law Office of Joseph A. Ables, Jr., Buffalo, N.Y., on the brief), for third party defendants-appellees Shayoung Contracting Corp. and Richard T. Connolly.

Lynn A. Forth (Thomas M. VanStrydonck, and Gough, Skipworth, Summers, Eves & Trevett, Rochester, N.Y., on the brief), for third party defendants-appellees John T. Rowe, Sr. and Rosemary Rowe.

Before TIMBERS, NEWMAN and WALKER, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from an order and judgment entered July 20, 1990 and from an order entered September 14, 1990, in the Western District of New York, David G. Larimer, *District Judge*, granting all appellees' motions for summary judgment pursuant to Fed.R.Civ.P. 56 and thereafter denying appellant Frank Parsons' motion for reconsideration pursuant to Rule 59(e).

Parsons commenced this personal injury action on May 9, 1984, to recover damages for injuries sustained in a propane gas explosion. Appellees Honeywell, Incorporated (Honeywell) and Northern Propane Gas Company (Northern) filed third party complaints against the remaining third party appellees. On July 20, 1990, the district court granted all appellees' motions for summary judgment and dismissed the complaint and cross-complaints.

On appeal, Parsons contends that the district court improperly held that his conduct, as a matter of law, was a superseding cause of his injuries; that he presented a *prima facie* case against the primary defendants, appellees Honeywell and Northern; and that the district court improperly indicated that a hearsay statement contained in a police report would be admissible at trial. Third party plaintiffs-appel-

lants (Honeywell and Northern) contend that issues of fact precluded the entry of summary judgment in favor of third party defendants-appellees.

For the reasons set forth below, we reverse and remand as to the main appeal (involving appellees Honeywell and Northern) and affirm in part and reverse and remand in part with respect to the appeals involving the third party appellees.

## I.

We shall set forth only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Many of the background facts are undisputed, as reflected in the district court opinion. In 1979, John and Rosemary Rowe, third party appellees (the Rowes), bought a used water heater of undetermined make for installation in the basement of a house they owned in Chili, New York. The Rowes' water heater burned liquid propane (LP) gas from an attached cylinder to heat water contained in the tank. As is commonly the case, the gas, which was stored in the cylinder under great pressure, passed out of the tank through a regulator that reduced the pressure to approximately four-tenths of a pound per square inch (.4 psi). The gas then passed into the heating unit where a pilot light was supposed to keep the heating unit in a constant state of ignition. If the pilot light went out, a power disc on the heating unit—manufactured by Honeywell—was supposed to slip into place to prevent gas leaks.

In September 1982, Parsons rented the Rowes' house and engaged the services of a local gas company to hook up two LP gas cylinders. The company removed the cylinders, however, when a dispute arose about the payment of a $47 fee. Parsons then decided to take matters into his own hands.

Parsons borrowed a 100–pound Pyrofax LP gas cylinder from his employer, third party appellee Shayoung Contracting Corp. (Shayoung), of which Parsons' brother-in-law, third party appellee Richard T. Connolly (Connolly), was vice-president. Parsons also obtained a gas regulator, a commercial model designed to deliver gas up to 35 psi. He detached this equipment from an industrial "salamander" stove (portable heater) for installation in his basement. He apparently asked permission to borrow the cylinder but not the regulator; he told no one at work what he planned to do with the equipment. Furthermore, he apparently ignored Rosemary Rowe's admonition that he not "monkey" with the gas system.

Parsons claims that he took the Pyrofax cylinder to third party appellee Mileage Master Center of Rochester, Inc. (Mileage Master) to be filled. Mileage Master obtains its gas from Northern, its local distributor. LP gas is odorless.

Once Parsons had assembled the materials, he attempted to hook up the commercial regulator and newly filled cylinder to his home water heater. He testified at his deposition that he had a difficult time making all the connections fit and that he dismantled and then reassembled parts of the regulator during the hook up procedure. He heard a faint hissing noise upon letting gas flow into the system, which he concluded was "gas seeping out of the system." He identified one source of the leak as the control valve, but ultimately concluded that he had overpressurized the system during the hook up. After a few adjustments, he was able to stop the hissing. Honeywell's expert was of the opinion—and Parsons produced no evidence to the contrary—that Parsons' overpressurization of the system knocked the Honeywell power disc in the heater out of place, rendering it inoperable and creating substantial risk of a gas leak.

For several weeks the system worked without mishap. On Saturday, May 14, 1983, however, a loss of hot water sent Parsons down to the basement. He testified at his deposition that he did not smell gas either when he was upstairs or as he descended to the basement. Having concluded that the pilot light had gone out, he held up his cigarette lighter and flicked it on. He testified that he could not recall whether he smelled gas at that point. An explosion ensued, blowing out windows,

knocking down part of the front wall, and shifting the foundation of the house. Ultimately, the house was declared unsafe and was demolished.

According to a police report compiled by Deputy Sheriff Joseph Bender shortly after arriving at the accident scene, eyewitness Jeff Brongo said that he was next door to the house when he heard the blast and saw the roof shake. Brongo ran next door where he encountered the badly burned Parsons stumbling out of the house. According to the report, Brongo heard Parsons say, "smelled gas—shouldn't have lit it up—help me—I tried lighting the water heater." Later, however, Brongo told an insurance investigator that he did not recall Parsons making that statement. Parsons also does not recall making the statement.

Parsons sought to hold Honeywell, Northern, and Mileage Master liable for the accident. After substantial discovery was completed, Mileage Master was dismissed from the main action because of lack of diversity. Parsons' action proceeded against Honeywell and Northern. He claimed that the power disc manufactured by Honeywell contained a design defect and that Northern failed to warn its customers of the dangers of LP gas and that it failed to properly odorize the gas. Parsons theorizes that there may have been a deficit or absence of the odorant—ethyl mercaptan—that should have been added to the gas that he obtained from Mileage Master. The residual gas used at the Rowe house was never inspected and is now unavailable.

Third party complaints were filed by Honeywell against the Rowes and by Northern against the Rowes, Mileage Master, Shayoung, and Connolly.

The district court held that Parsons' conduct—"attempting to light an altered, jury-rigged and leaky LP gas system while aware of the potential consequences"—was the superseding cause of his injuries. It found that he was "aware of the obvious dangers posed by modifying the system and attempting to light the pilot in the presence of gas." The court further held that third party appellees could not be held

liable as a matter of law. Finally, it held that Brongo's statement in the police report that Parsons said he smelled gas would be admissible at trial. The court granted all appellees' motions for summary judgment, and dismissed the complaint and cross-complaints. This appeal followed.

## II.

As a threshold matter, we address the basis of our jurisdiction and set forth the relevant standard of review.

We hold that we have jurisdiction over the instant appeal in that the orders and judgment appealed from are final within the meaning of 28 U.S.C. § 1291 (1988).

Since the appeal involves summary judgments, we review the claims of genuine issues of material fact *de novo*, drawing all inferences in appellants' favor. *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1131 (2 Cir.1989). It is axiomatic that "[i]t is not the trial court's function to weigh the evidence and resolve the factual issues; rather, its role on such a motion is to determine as a threshold matter whether there are genuine unresolved issues of material fact to be tried." *Id.* at 1132 (citation omitted).

## III.

With the foregoing in mind, we turn to the question whether the district court impermissibly resolved factual disputes against Parsons and whether a *prima facie* case has been made out against the various appellees. We first set forth the guiding norms for assessing claims sounding in negligence and products liability. Then we turn to the sufficiency of the claims and evidence as to the individual appellees. We conclude that the summary judgments in favor of Honeywell, Northern and Mileage Master must be reversed.

New York law applies in this diversity case. The New York Court of Appeals, in the context of discussing jury charges, has made the following pronouncement about negligence:

"whether the issue is the negligence of the defendant or the contributory negli-

gence of the plaintiff, the test for determining whether the facts pose a question for resolution by the jury remains the same: is there a 'valid line of reasoning and [are there] permissible inferences which could possibly lead rational men to the conclusion [of negligence] on the basis of the evidence presented at trial'?"

*Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 517, 407 N.E.2d 451, 456, 429 N.Y.S.2d 606, 612 (1980) (quoting *Cohen v. Hallmark Cards*, 45 N.Y.2d 493, 499, 382 N.E.2d 1145, 1148, 410 N.Y.S.2d 282, 285 (1978)). More recently, in the context of affirming a grant of summary judgment in favor of an owner whose building was simply used to perpetrate, on a non-tenant of the building, a crime that began on a public street, the Court of Appeals held that:

" '[p]roof of negligence in the air . . . will not do.' . . .

The scope of an alleged tort-feasor's duty is, in the first instance, a legal issue for the court to resolve. . . . The common law of torts is, at its foundation, a means of apportioning risks and allocating the burden of loss. . . . [W]e are . . . bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that 'the legal consequences of wrongs [are limited] to a controllable degree.' "

*Waters v. New York City Hous. Auth.*, 69 N.Y.2d 225, 228–29, 505 N.E.2d 922, 923–24, 513 N.Y.S.2d 356, 358 (1987) (citations omitted).

The district court expressly invoked both *Nallan* and *Waters* in holding, as a matter of law, that neither Honeywell nor Northern could be liable for Parsons' injuries, since Parsons' own conduct was the superseding cause. We believe, however, that there is a "valid line of reasoning" that could support a jury verdict for Parsons. Even keeping in mind the "larger social consequences," Parsons' theory of liability is not so out-of-bounds as to preclude submission to a jury.

■ The question of superseding cause itself generally is one for the jury. *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315, 414 N.E.2d 666, 670, 434 N.Y.S.2d 166, 169–70 (1980). Only in rare instances can the question be decided as a matter of law. *Id.*, 414 N.E.2d at 670, 434 N.Y.S.2d 170. The example given by the *Derdiarian* court clearly is distinguishable from the case at bar:

"Thus, for instance, we have held that where an automobile lessor negligently supplies a car with a defective trunk lid, it is not liable to the lessee who, while stopped to repair the trunk, was injured by the negligent driving of a third party. . . . In short, the negligence of the renter merely furnished the occasion for an unrelated act to cause injuries not ordinarily anticipated."

*Id.* at 315–16, 414 N.E.2d at 670–71, 434 N.Y.S.2d at 170 (citations omitted). Here, it was Parsons' actions in *conjunction* with the gas and heater component themselves that might be said to have contributed to the accident—not a totally unrelated act.

*Honeywell*

■ Parsons asserts that, with respect to Honeywell, the court failed to apply the applicable New York law on products liability. In *Voss v. Black & Decker Manufacturing. Co.*, 59 N.Y.2d 102, 107–08, 450 N.E.2d 204, 208, 463 N.Y.S.2d 398, 402 (1983), the court explained that, in order to make out a *prima facie* case of strict products liability for design defects, the plaintiff must show that the product "was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury. . . . It will be for the jury to decide whether a product was not reasonably safe in light of all the evidence presented by both the plaintiff and defendant."

Misuse or mishandling is relevant for jury consideration "on the issue of whether the plaintiff's negligence contributed to the accident." *Sheppard v. Charles A. Smith Well Drilling and Water Sys.*, 93 A.D.2d 474, 478, 463 N.Y.S.2d 546, 548–49 (3d Dep't 1983). Furthermore, while foreseeability is an issue, the precise chain of events leading up to the accident need not be foreseen. Rather, "foreseeability includes the probability of the occurrence of

a general type of risk involving the loss, rather than the probability of the occurrence of the precise chain of events preceding the loss ...." *Tucci v. Bossert*, 53 A.D.2d 291, 293, 385 N.Y.S.2d 328, 331 (2d Dep't 1976) (citations omitted). Although Honeywell adduced evidence that its power disc met and exceeded various industry standards and that over five million valves were used residentially without incident, Parsons submitted evidence that, nonetheless, Honeywell was aware of the risk of pop-off as early as 1972. The court held, however, as a matter of law, that it was unreasonable to require Honeywell to anticipate that a customer would subject the system to such extreme overpressurization.

The court went on to say that "even if I concede for the sake of argument some fault on Honeywell's part, that fault was not the cause of plaintiff's injuries." The court relied on the "indication" in the police report that "plaintiff did indeed detect gas but went ahead and attempted to light his system anyway"—thus resolving a critical factual dispute (whether or not Parsons smelled gas) against Parsons. The court's assumption that Parsons went forward and attempted to light the heater while "aware of the potential consequences" assumes that he smelled gas and unfairly imputes veritable suicidal tendencies to Parsons.

We acknowledge at this stage that Parsons' own evidence with regard to whether or not he smelled gas is ambiguous. That is, he did not unequivocally state that, at the time he lit the cigarette lighter, he did not smell gas. Rather, he stated that he could not recall whether or not he smelled it. This critical distinction has not eluded us. By *de facto* concluding, however, in the face of the conflicting evidence, that Parsons must have smelled gas, we believe that the court impermissibly invaded the province of the jury. Although many plaintiffs in Parsons' litigation posture might self-servingly have stated that they did not smell gas, we commend appellant's candor in stating that he simply did not recall. We do not find his inability to recall to be fatal to his case. Almost simultaneously with Parsons' lighting the lighter, he was the victim of an explosion so massive that it shook the house's very foundation; Parsons himself was engulfed in a fireball. Under these circumstances, it is hardly incomprehensible that Parsons could not remember what his sensations were immediately prior to being severely burned. We hold that it is for the jury to evaluate his testimony, along with the other evidence in the case. *Tucci, supra*, 53 A.D.2d at 294, 385 N.Y.S.2d at 331 ("the issues of the knowledge of the dangers to be encountered ..., the use or misuse by the ... plaintiff of the product, ... the general question of proximate cause under the circumstances and the conduct of the ... plaintiff at the time of the incident, are all matters within the domain of the jury, to be decided upon the proof presented").

### Northern

As for Northern, Parsons asserts that the district court mischaracterized his claim. He says that "given the deficiencies of ethyl mercaptan as a warning agent, Northern was obligated to provide further information and warnings to consumers to provide for the safe use of LP gas." The district court focused on Northern's evidence that the gas it sold was properly odorized and held that there is no duty to warn of obvious dangers. Parsons, however, has produced expert testimony regarding "odor fade". In light of that evidence, we hold that the district court erred in reaching the legal conclusion that Northern had no duty whatsoever to provide any warnings relating to the use of its product.

In *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 63–65, 427 N.Y.S.2d 1009, 1014–15 (4th Dep't 1980), another case involving this same appellee, the court held that the trial court had erred in not charging the jury on Northern's duty to warn of the "dangerous propensities of propane gas", stating that "[t]he generally accepted rule ... is that the reasonableness *vel non* of a set of warnings is a question of fact for the jury." *See also Tucci, supra*, 53 A.D.2d at 294, 385 N.Y.S.2d at 331 (quality of warning given is within the domain of the jury).

Although "in a proper case the court can decide as a matter of law that there is no duty to warn", *Northern Propane, supra,* 75 A.D.2d at 65, 427 N.Y.S.2d at 1015, this, no less than that case, is not such a case. There, an employee set down a leaking gas cylinder in a washroom alongside a gas water heater that operated with a constant pilot light on. Surely the dangers attendant in that case were no more "obvious" than those in this case—especially when, drawing the inference in favor of Parsons to which he is entitled, one assumes that he did not smell gas when he attempted to light the pilot.

We hold that the court's grant of summary judgment in favor of Northern must be reversed.

*Mileage Master*

Since we reverse the grant of summary judgment in favor of Northern, we also reverse the dismissal of Northern's third party complaint against Mileage Master, Northern's retailer, which actually supplied the LP gas to Parsons. In its brief and at oral argument, Mileage Master essentially linked its fate with that of Northern and concentrated its efforts on defeating Parsons' underlying claims. It did not even argue that Northern's claims against it should not be reinstated in the event summary judgment in favor of Northern were reversed. Furthermore, the court stood mute with regard to the specific third party complaint against Mileage Master, although it did analyze separately the third party claims against the Rowes, Shayoung, and Connolly. Northern asserts that Mileage Master failed to adhere to Northern's business policy of allowing and permitting the filling of only Northern LP gas cylinders.

We hold that Northern's third party complaint against Mileage Master must be reinstated.

*Remaining Appellees: the Rowes, Shayoung, and Connolly*

We reach a different conclusion with respect to the remaining third party appellees, whose connection to this accident was far more tangential than was Mileage Master's.

We affirm the granting of summary judgment in favor of these appellees, for essentially the reasons set forth in the district court's opinion.

IV.

██ Finally, we address the question of the controversial hearsay evidence by the witness Brongo contained in Deputy Sheriff Bender's report. We agree with Parsons that it is of dubious value and, contrary to the district court's ruling that it would be admissible at trial, we hold that it should not be admitted. The statement represents what Brongo told Deputy Sheriff Bender what Parsons told Brongo. It is hearsay within hearsay.

We agree with the district court that the police report itself would be admissible as a public record pursuant to Fed.R.Evid. 803(8). Similarly, we agree that Parsons' purported statement would be admissible as an "excited utterance" pursuant to Rule 803(2). Brongo's statement to Deputy Sheriff Bender, however, is, as the district court recognized, "more difficult because it fits into no specific exception...." It is plainly not admissible merely because contained in a police report. "It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted *but that statements made by third persons under no business duty to report may not.*" *United States v. Pazsint,* 703 F.2d 420, 424 (9 Cir.1983) (emphasis added).

The district court found Brongo's statement to the deputy sheriff to be admissible under the "residual" exception to the hearsay rule. Fed.R.Evid. 803(24). "Congress 'intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances.'" *Huff v. White Motor Corp.,* 609 F.2d 286, 291 (7 Cir.1979) (citations omitted). To be admissible pursuant to the residual exception, the evidence must fulfill five requirements: trustworthiness, materiality, probative importance, the interests of justice and notice. Fed.R.Evid. 803(24); *Huff, supra,* 609 F.2d at 292–95. In this case, we disagree with

the court's conclusion as to its probative value. To meet that test, the evidence must be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts...." Fed.R.Evid. 803(24)(B). Brongo apparently is able to testify in person. We agree with Parsons that the evidence should be used only to refresh Brongo's recollection. In this manner, both sides will have the opportunity to examine and cross-examine the witness, and his veracity can be judged first-hand by the trier of the facts.

## V.

To summarize:

We hold that the district court improperly resolved a factual dispute against Parsons and invaded the province of the jury in finding, as a matter of law, that Parsons' actions were the superseding cause of his injuries in a propane gas explosion. We accordingly reverse the grant of summary judgment in favor of appellees Honeywell and Northern on the main claim, and in favor of Mileage Master on Northern's third party complaint. We affirm the grant of summary judgment in favor of the remaining third party appellees, whose connection to the underlying explosion was too remote to justify the imposition of liability. We hold that a hearsay statement contained in a police report would not be independently admissible at trial pursuant to Fed.R.Evid. 803(24).

Affirmed in part; reversed and remanded in part.

JON O. NEWMAN, Circuit Judge, dissenting in part:

The question raised by this case is how far New York courts will go in imposing liability on manufacturers for their failure to anticipate misuses of their products. Since I do not believe that New York courts would go as far as the majority has gone in obliging manufacturers to pay for customers' self-inflicted damages, I respectfully dissent from the Court's judgment insofar as it remands the plaintiff's claim against Honeywell, Inc. for trial.

Honeywell manufactured a "heating unit" for a water heater fueled by liquid propane. During the relevant period of manufacturing, the unit was equipped with a "power disc" that shuts off the flow of gas when the pilot light goes out. The unit was designed, in accordance with industry standards, for use with residential regulators that reduce the pressure of the liquid propane in a tank (70 to 120 psi) to the pressure appropriate for the heating unit (0.4 psi).

Frank Parsons decided to hook up his own system, using a commercial regulator instead of the residential regulator that had been connected. The commercial regulator permitted pressure of 35 psi to be supplied to the heating unit, about 80 times the pressure that a residential regulator would have supplied. The commercial regulator differed in configuration and shape from the residential regulator that had originally been installed, and Parsons was aware of the differences. By using the wrong kind of regulator, Parsons "blew off" the power disc and rendered it inoperable. After three weeks of use, the pilot light went out, and the power disc failed to cut off the flow of gas. Parsons ignited a cigarette lighter to relight the pilot, exploded the gas that had leaked out, and caused himself extensive injuries.

The majority rules that a jury may find Honeywell responsible for the accident on the theory that the risk of excessive pressurization was reasonably foreseeable. The undisputed evidence is that between five and eight million units were sold, and the only documented instance of an accident caused by an overpressurized power disc was this unfortunate accident involving Frank Parsons. There was additional evidence that some original equipment manufacturers and municipal inspectors had succeeded in damaging the power disc by applying excessive pressure in the course of testing. But those who test are supposed to check the results of their testing, and the experience of these testers cannot charge Honeywell with knowledge that homeowners will apply 80 times too much pressure and not check to see if all

components are still working. Honeywell may have been on notice that excessive pressure will ruin the power disc (an atomic explosion probably would too), but it was not on notice that homeowners would subject their heating units to the excessive pressure applied by Frank Parsons.

I do not doubt that it was conceivable that some homeowner would decide to hook up his own water heater and select the wrong regulator. The question is whether there was a *sufficient* risk to oblige Honeywell to design its heating unit to withstand pressure 80 times beyond the normal or to warn homeowners not to apply such abnormal pressure. Or, in the language of tort law, was it reasonably foreseeable that 80 times the normal pressure would be applied? If a case is permitted to go to a jury simply to see whether they choose to say that any risk of some unusual occurrence was foreseeable, then judges will have abandoned their role in policing the outer limits of tort liability. I do not believe the New York courts have gone so far, and I do not think they would do so in this case. *See Amatulli v. Delhi Construction Corp.*, 156 A.D.2d 500, 548 N.Y.S.2d 774 (2d Dep't 1989); *Knickerbocker v. De Mars*, 147 A.D.2d 739, 537 N.Y.S.2d 777 (3d Dep't), *leave to appeal denied*, 74 N.Y.2d 606, 543 N.E.2d 85, 544 N.Y.S.2d 820 (1989); *Kehn v. Cooley Volkswagen Corp.*, 94 A.D.2d 876, 463 N.Y.S.2d 570 (3d Dep't), *leave to appeal denied*, 60 N.Y.2d 556, 455 N.E.2d 1265, 468 N.Y.S.2d 1025 (1983).

Tort law has not yet become a mechanism for permitting juries to shift the costs of all accidents from victims to manufacturers. Liability exists for failure to design or failure to warn in regard to reasonably foreseeable dangers. Though I acknowledge that it is a matter of judgment in each case whether the facts fall within the range of arguably reasonable foreseeability in which a jury may find for the victim, I do not believe that the requisite facts have been presented in this instance to create a jury issue. Frank Parsons did not dive into an empty swimming pool, but he nevertheless misused Honeywell's product beyond the degree of misuse that a manufacturer is obliged to expect.

With respect to the claims against the wholesale and the retail suppliers of the liquid propane for failure to warn of the dangers of leaking gas, I would have agreed with Judge Larimer that summary judgment for defendants was proper were it not for the decision of the Appellate Division in *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 63–65, 427 N.Y.S.2d 1009, 1014–15 (4th Dep't 1980). The Court there reversed a trial judge for not submitting to the jury a claim that this same propane wholesale supplier could be liable for failing to warn of the risk of storing a leaking gas container in a room in which a water heater was operating with a pilot light. I confess to considerable difficulty in understanding why liability was permitted to be found in that case, but I agree that if that risk could be found to require a warning, then a jury must be permitted to decide whether Parsons should have been warned of the risk of relighting the pilot light.

I do not agree, however, that Judge Larimer "unfairly impute[d] veritable suicidal tendencies to Parsons." Op. at 906. The Judge said only that Parsons was aware of the "potential consequences," as the undisputed evidence shows that he was. Doubtless, Parsons did not expect to cause an explosion, much less intend one; rather, he acted as do most people who negligently cause themselves serious harm—he simply did not think carefully about the risks of his conduct nor pause to assess just how likely it was that those potential consequences would occur.

I would affirm the grant of summary judgment in favor of Honeywell.