**Michael GARNSEY and Georgia Garnsey, Plaintiffs,**

v.

**MORBARK INDUSTRIES, INC. and Morbark Forestry, Inc. Defendants.**

**No. 95–CV–1692.**

United States District Court, N.D. New York.

July 15, 1997.

Finkelstein, Levine, Gittelsohn, & Tetenbaum, Newburgh, NY (Steven Lim, of counsel), for Plaintiffs.

Jeffrey Samel & Associates, New York City (Jeffrey Samel, of counsel), for Defendants.

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

Plaintiffs Michael and Georgia Garnsey bring this product liability action pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. Defendants now move for summary judgment.

## I. BACKGROUND

### A. Facts

On May 23, 1994, plaintiff Michael Garnsey ("plaintiff") was injured while using a Morbark Model 22 chipper in the course of his employment with Ava Wood Products. (Pl. Aff. ¶ 2; Def. 7.1(f) Stmt. ¶¶ 1–2). Prior to the accident, plaintiff had been operating the chipper almost every day for approximately three years. (Pl.Aff.¶ 5).

On the day of the accident, plaintiff shut off the motor of the chipper after he completed a chipping task. (Id. ¶ 10). After shutting off the motor, plaintiff waited several minutes before inserting his hand inside the chipper to check the tension of the belt. (Id. ¶ 11). The belt was still moving when plaintiff checked it, however, and it drew his fingers along the belt towards the pulley. (Id. ¶ 12). Plaintiff's left hand became caught between the belt and a pulley, and as a result two of plaintiff's fingers on his left hand were partially severed. (Pl. Dep. at 139).

### B. Procedural History

Plaintiff filed the present action on November 30, 1995. Plaintiff alleges that the chipper was defectively designed in that the manufacturer could have installed: (1) a small guard over the area of the nip point where the plaintiff was injured; (2) a friction brake or engine brake to stop the movement of the belt and pulley for the hydraulic pump in a matter of seconds, rather than the ten minutes that it usually took for the belt and pulley to stop after the clutch was disengaged; (3) a visual warning to alert the operator that the belt and pulley for the hydraulic pump were still moving; (4) a hinged guard which when opened would have exposed the belt and pulley to adequate light to allow the operator to determine whether the belt and pulley had stopped before attempting to check the tension of the belt; or (5) a mechanical or electrical indicator on the side of the chipper where plaintiff was injured to indicate whether the belts and pulleys were still moving.

Plaintiff also alleges that the chipper lacked adequate warnings in that nothing in the Operator's Manual or on the chipper itself advised the operator: (1) not to perform any maintenance or inspection for a stated period of time after the engine had been turned off and the clutch disengaged, when the belts or pulleys would continue to be running; (2) to insure that the belts and pulleys had stopped before attempting to perform maintenance or inspection of the belts or pulleys; (3) how to check whether the belts and pulleys had stopped; (4) of the danger of the nip point between the infeeding belt and the pulley; and (5) to walk around to the other side of the chipper and determine if the cutter wheel was still turning before testing the tension on the belt for the hydraulic pump.

Defendants filed the present motion for summary judgment on April 4, 1997. In support of their motion, defendants point to the following facts that they allege are undisputed: (1) the belt and pulley on which plaintiff was injured was covered by an orange metal shroud or guard; (2) prior to and at the time of the accident, plaintiff knew that the machine was inherently dangerous; (3) prior to and at the time of the accident, plaintiff knew that various parts of the wood chipper would continue to run for approximately ten minutes after the machine was shut off; (4) prior to and at the time of the accident, plaintiff knew that one of the parts that continued to run was the belt on which he caught his hand; (5) prior to checking the tension belt, plaintiff did not look under the guard to determine if it was still moving; (6) prior to checking the tension on the belt, plaintiff did not look at another belt visible on the other side of the machine to determine if it was still moving; (7) a gauge which would have told plaintiff whether any parts were still moving was not working and had

not been working for about three years prior to the accident. Defendants thus argue that after three years of working on this particular wood chipper without incident, and having acquired full knowledge of the dangers attendant upon attempting maintenance while the chipper parts were still in motion, plaintiff acted with gross carelessness in causing his own injuries.

## II. DISCUSSION

### A. The Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). However, the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise.

*Delaware & H.R. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356).

### B. Defective Design

■ In a strict product liability action, a plaintiff may assert that the product is defective because of an improper design. *Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir.1991) (citing *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 401, 450 N.E.2d 204, 206–07 (1983)). A product is defectively designed if it presents an unreasonable risk of harm, notwithstanding the fact that it was carefully made according to detailed plans and specifications. *Urena v. Biro Mfg. Co.,* 114 F.3d 359, 365–66 (2d Cir.1997) (citing, *inter alia,* Restatement (Second) of Torts 402A; *Micallef v. Miehle Co., Div. of Miehle–Goss Dexter, Inc.,* 39 N.Y.2d 376, 384 N.Y.S.2d 115, 121, 348 N.E.2d 571, 577–78 (1976)) (other citations omitted).

■ Design defect claims in New York are determined using a risk/utility analysis. Under this analysis, a plaintiff must show that "if the design defect were known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Bravman v. Baxter Healthcare Corp.,* 984 F.2d 71, 76 (2d Cir.1993) (internal quotations omitted). In order to make out a *prima facie* case of strict product liability for design defects, the plaintiff must show that the product "was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 905 (2d Cir. 1991). The issue of whether a product is unreasonably dangerous is generally one for the jury to decide, taking into account such factors as alternative designs, their costs, and the usefulness of the product. *Urena,* 114 F.3d at 364.

■ In the present case, plaintiff has made out a *prima facie* case of design defect. Plaintiff has provided evidence, in the form

of expert opinion, that alternative designs existed which were not only safer, but were also economically feasible. First, plaintiff's expert states that the manufacturer "could easily have installed a small guard over the area of the nip point" and that "such a guard would have allowed Mr. Garnsey to test the tension of the hydraulic pump belt daily without the possibility of his hand being caught in the nip point." (Affidavit of George H. Kyanka, Ph.D. ["Kyanka Aff."] ¶ 7).

Defendants counter, however, that plaintiff's theory is not valid under New York product liability law, where the question is whether the product is "reasonably safe for its intended use." (Def. Reply Mem. at 2 (citing *Cover v. Cohen*, 61 N.Y.2d 261, 473 N.Y.S.2d 378, 380, 461 N.E.2d 864, 866 (1984))). Defendants further emphasize that the operator was protected from accidental contact with the point of danger by an existing orange metal shroud, and that plaintiff has presented no evidence that any other manufacturer has installed such a second guard. (Def. Reply Mem. at 4).

Plaintiff is not required to present such evidence at this point. In order to make out a *prima facie* case, plaintiff must show that the product "was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." *Parsons*, 929 F.2d at 905. Plaintiff has met this burden. It is undisputed that the manufacturer recommended the belt tension be checked daily. (Def. Reply Mem. at 3; Pl. Mem. at 5). Plaintiff asserts that the only way to check the tension was to reach *under* the protective orange shroud. (Pl. Mem. at 5). Defendants do not dispute this assertion. Considering that plaintiff was recommended to check the belt tension on a daily basis, and considering that the only way to check the tension was to reach under the protective shroud, a jury could reasonably conclude that the protective shroud provided inadequate protection for plaintiff while checking the belt. Thus, the lack of a second guard over the area of the nip point where plaintiff was injured may have rendered the machine "not reasonably safe." If a jury was to find such a design defect, the conclusion that it was a substantial factor in causing the plaintiff's injury seems eminently reasonable.

Second, plaintiff's expert states that "the manufacturer could have installed a friction brake similar to those used on other industrial wood working machines, or a brake similar to that used on the diesel engine of a tractor trailer, called an engine brake," to stop "the rotation of the chipper wheel and the belt and pulley for the hydraulic pump in question in a manner of seconds rather than … ten minutes." (Kyanka Aff. ¶ 8). Though defendants argue that such brakes "if feasible at all, would surely be extremely expensive in comparison to the machine itself and would require a great increase in size," (Def. Reply Mem. at 5 (citing Affidavit of Vincent Morabit ["Morabit Aff."] ¶ 3)), this dispute creates a triable issue of fact for the jury to decide within the framework of the risk/utility analysis. If such a brake was indeed feasible, both in terms of safety and cost (and based upon Kyanka's affidavit, a jury could reasonably conclude that it was), then a chipper whose chipper wheel and belt and pulley mechanism continued to rotate for ten minutes arguably was not reasonably safe. Moreover, the continued rotation of the belt and pulley certainly could be found to be a substantial factor in causing plaintiff's injury.

Defendants also argue that plaintiff's actions in failing to wait until the parts had completely stopped was an unforeseeable intervening cause of the accident. Essentially, defendants contend that plaintiff's actions severed the causal connection between the alleged design defect and the accident, thereby voiding any potential liability the defendants might have incurred.

■■ To make a *prima facie* showing of proximate cause, plaintiff must show that "defendant[s'] negligence was a substantial cause of the events which produced the injury." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 670 (1980). Whether plaintiff's conduct in checking the belt before the belt and pulley mechanism had completely stopped is sufficient to break the causal nexus turns upon whether such conduct was a "normal or foreseeable consequence of the situation created by the defendant[s'] negli-

gence." *Id.* 434 N.Y.S.2d at 169, 414 N.E.2d at 670. "Because ... what is foreseeable and what is normal is subject to various inferences, [proximate cause] is generally a question for the fact finder to resolve." *Brucculeri v. Nat'l R.R. Passenger Corp.*, 1996 WL 328748 at *2 (S.D.N.Y.1996).

Here, while plaintiff's conduct in checking the belt before the belt and pulley mechanism had completely stopped may have been negligent in and of itself, it cannot be said, as a matter of law, that such conduct was neither normal nor foreseeable. While defendants argue that there was no requirement or recommendation that the belt tension be checked after the machine had been used (Def. Mem. At 3), they fail to offer evidence of a requirement or recommendation that the belt tension be checked *prior* to using the machine. Given the lack of adequate instructions as to when the belt should be checked, it would not be unreasonable for a jury to conclude that plaintiff's conduct was both normal and foreseeable.

As to the third and fourth claims of defective design, that the manufacturer could have installed some type of indicator or visual warning on the chipper so that the operator would know the belts and pulleys were still moving, it is unclear to what extent such visual warnings were already present on the chipper. However, the Court need not reach the merits of these claims as plaintiff's first two theories are supported by sufficient evidence to withstand defendants' motion.

### C. Failure to Warn

■ A plaintiff may recover in strict product liability for the manufacturer's failure to warn of the risks and dangers associated with the use of its product. *Urena,* 114 F.3d at 365 (citing *Polimeni v. Minolta Corp.,* 227 A.D.2d 64, 653 N.Y.S.2d 429, 430 (3d Dep't 1997); *Bukowski v. CooperVision Inc.,* 185 A.D.2d 31, 592 N.Y.S.2d 807 (3d Dep't 1993)). That duty includes warning the consumer of the dangers resulting from the foreseeable use of the product. *Urena,* 114 F.3d at 365 (citing *Bukowski,* 592 N.Y.S.2d at 808). The precise chain of events leading up to the accident need not be foreseen. Rather, "foreseeability includes the probability of the occurrence of a general type of risk involving the loss, rather than the probability of the occurrence of the precise chain of events preceding the loss...." *Parsons,* 929 F.2d at 905 (quoting *Tucci v. Bossert,* 53 A.D.2d 291, 385 N.Y.S.2d 328, 331 (2d Dep't 1976)) (citations omitted). "The adequacy of the instruction or warning is generally a question of fact to be determined at trial, and is not ordinarily susceptible to the drastic remedy of summary judgment." *Beyrle v. Finneron,* 199 A.D.2d 1022, 606 N.Y.S.2d 465, 466 (4th Dep't 1993); *see also Harrigan v. Super Products Corp., Dow & Co., Inc.,* —— A.D.2d ——, 654 N.Y.S.2d 503, 504 (4th Dep't 1997).

■ Plaintiff also makes out a *prima facie* case of failure to warn. While plaintiff concedes that "the Operator's Manual does advise the operator 'never [to] attempt any maintenance while the diesel engine is running.'" (Kyanka Aff. ¶ 6), plaintiff's expert goes on to state that there is no warning in the Operator's Manual or on the chipper itself as to how long the operator should wait after the engine has been turned off before inspecting the belts. (Kyanka Aff. ¶ 6).

Defendants argue that "numerous recent New York decision have held unequivocally that there is no duty to warn of a danger which is obvious and which the injured party either did or should have appreciated the danger to the same extent as a warning would provide." (Def. Reply Mem. at 6–7 (citing *DePasquale v. Morbark,* 221 A.D.2d 409, 633 N.Y.S.2d 543 (2d Dept.1995)). Defendants assert that since plaintiff already testified that he was aware that it was dangerous to place his hand on the belt while it was still moving, and that he had avoided doing so when checking the belt tension on several previous occasions, defendants "had no duty to warn of any dangerous condition of which the plaintiff was aware." (Def. Reply Mem. at 7).

It is hornbook law that a manufacturer has no duty to warn consumers of obvious dangers of which they are already aware. *Smith v. Stark,* 67 N.Y.2d 693, 499 N.Y.S.2d 922, 490 N.E.2d 841 (1986); *Oza v. Sinatra,* 176 A.D.2d 926, 575 N.Y.S.2d 540 (2d Dept.

1991). However, it is not clear that the danger was obvious to plaintiff. The defendants do not provide, and the Court is unable to locate, the point in plaintiff's deposition where he admits that he was aware it was dangerous to place his hand on the belt while it was still moving. The closest thing to such an admission is as follows:

> Q. "Did he (Mr. Still) ever advise you that this is a dangerous piece of equipment?"
>
> A. "No."
>
> Q. "Was that obvious?"
>
> A. "Yeah. It was just so obvious. I didn't want to get near the thing to begin with, it was incredible, made so much noise." (Pl. Dep. at 85).

It is clear that in this exchange the only fact plaintiff admits to is that the machine *itself* is dangerous. He does not admit that he knew it was dangerous to place his hand on the belt while it was still moving. This is supported by plaintiff's affidavit:

> "It was obvious that the chipper was a dangerous piece of equipment in the sense that anything caught in the knives would be cut up into little pieces. It was not obviously dangerous that in tapping the belt, my fingers could be drawn by the belt into the pulley." (Pl.Aff.¶ 8).

However, even if plaintiff knew that it was dangerous to place his hand on the belt while it was still moving, that knowledge would be irrelevant in light of the fact that plaintiff believed the belt had stopped moving. As he states in his affidavit, "based upon my experience in shutting down the chipper over the past three years, I thought that the belts had stopped moving. I had not noticed any unusual indications that would have led me to suspect that the belts may still have been moving." (Pl.Aff.¶ 11). Whether plaintiff's actions constituted a danger that was obvious is ultimately a question that is best suited for a jury to decide.

## III. CONCLUSION

In sum, plaintiff has produced sufficient facts to establish that there is a genuine issue of material fact for trial. It is therefore

ORDERED, that defendants motion for summary judgment against is DENIED.

**IT IS SO ORDERED.**