■ BRUCE DOOLITTLE et al., Appellants, v T.E. CONKLIN BRASS & COPPER CO., INC., et al., Respondents. — Judgment, Supreme Court, New York County (Allen Murray Myers, J.), entered March 14, 1983, upon a jury verdict in favor of defendants dismissing the complaint herein, is unanimously reversed, on the law, the facts, and in the exercise of discretion, and a new trial ordered, with costs to abide the event. ¶ The essential facts adduced at trial establish that on January 13, 1978, Bruce Doolittle, a driver for the Airfield Service Company, a charter bus company located in Windsor Locks, Connecticut, was assigned, along with another bus and driver, to transport passengers from Springfield, Massachusetts, to Kennedy Airport. The bus which Doolittle drove was a six-ton, 40-foot, Greyhound-type bus, manufactured by General Motors Corporation. He and the other driver discharged their passengers at Kennedy Airport at 9:00 A.M., and proceeded on the return trip to Windsor Locks by way of the Van Wyck Expressway, the Whitestone Bridge and Interstate 95 North (I-95N). A combination of rain and snow was falling at the time, making visibility poor and the road surface wet. However, there were no accumulations of snow. These weather conditions prevailed as Doolittle's bus proceeded to enter I-95N from the Whitestone Bridge toll plaza. I-95, which at that location is known as Bruckner Expressway, is a six-lane dual highway with three lanes northbound and three lanes southbound. The westernmost northbound left lane is separated from the three southbound lanes by a concrete barrier and to the right (east) of the easternmost northbound right lane is a narrow shoulder or "breakdown" lane, to the east of which is a chain-link fence. ¶ As Doolittle was traveling northbound in the right or easternmost lane, he saw a truck ahead of him, just short of the East Tremont Avenue overpass. Although there does not appear to have been any testimony approximating the distance from the toll plaza to the point where the truck was stopped, the jury was provided with a picture of the location, from which it could make its own determination. Nevertheless, the court, in its charge, stated that the distance was 1,000 feet. Doolittle glanced into his rear-view mirror to locate his companion bus and upon reaffixing his eyes to the road ahead of him, realized that the truck in front of him was at a complete stop. Doolittle testified that he looked out of his left window to see if there was any traffic in the middle lane, put on his left turn signal and started to move into the middle lane to avoid the truck. He felt the impact of another vehicle behind the left front wheel of the bus. That impact caused the bus to veer back into the right lane and collide with the rear end of the stopped truck. The bus bounced off the truck, crossed the middle lane and entered the left lane where it came to rest in an angular position, with its front end touching the concrete divider and the body of the bus extending across the left and middle lanes. The automobile driven by John Speredakos, which had collided with the bus came to a stop at the rear of the bus. Doolittle testified he had not seen any warning lights, flares, cones or any other devices that indicated that the truck was stopped.

¶ Genaro Gonzalez, the operator of the truck, owned by T.E. Conklin Brass & Copper Co., Inc., testified that the truck stalled as he drove in the northbound right lane. He stated that he had not pulled into the "breakdown" lane, but that after the truck stopped, he went to the rear of the truck to direct traffic around the truck. He said that he remained there for some 8 to 10 minutes before returning to the cab of the truck to get out of the uncomfortable weather. He testified that before doing so however, he tied a red flag to the rear of the truck. He also testified that he had turned on the truck's blinker lights. ¶ Portions of the deposition of John Speredakos were read into evidence. He stated that he first heard a crash and then saw the bus veer into his lane, sideswiping his car. According to his testimony, his vehicle was in the left lane at all times prior to, during and after the accident. ¶ Following the completion of its charge and over plaintiff's objections, the court submitted written interrogatories to the jury. The interrogatories were divided into sets, the first of which addressed the negligence of each of the three drivers and the second questioned the extent to which any negligence found on the part of any driver was the proximate cause of Doolittle's injuries. The jury found that Doolittle was the only negligent driver and that his negligence was the sole proximate cause of the accident. Judgment in favor of the defendants Conklin Brass & Copper Co. and Genaro Gonzalez dismissing the complaint was entered. Plaintiffs had discontinued against the Speredakoses at the close of the evidence. Plaintiffs argue on this appeal that the court's charge and the order in which the interrogatories were presented was so prejudicial as to deprive them of a fair trial. We reverse and order a new trial. The hypothetical example used by the court in its charge to explain the concept of proximate cause and the characterization of the situation confronting Gonzalez as an emergency, in effect, improperly removed these issues from the jury's consideration and thus prejudiced the plaintiffs. We also conclude that the court's marshaling of the evidence was unbalanced and that provisions of statutes that were wholly inapplicable to the case presented were improperly included in the court's charge, thus depriving plaintiffs of a fair trial. (*Kissner v Baxter,* 29 AD2d 905.) ¶ The court's charge to the jury should " 'incorporate the factual contentions of the parties in respect of the legal principles [involved in the case]' " (*Green v Downs,* 27 NY2d 205, 208), but "[i]t is hornbook law that: '[i]f the charge is ambiguous, inconsistent, erroneous, confusing, one-sided, incomplete or overly technical a new trial will be ordered if prejudice has resulted to any party.' (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.17 [footnotes omitted])". (*Gannon Personnel Agency v City of New York,* 55 AD2d 548, 549.) In its charge in respect to the concept of proximate, intervening and superseding causes, the court posed the following "hypothetical" example: ¶ "Let's suppose that a truck was parked illegally in a travelled portion of the road. It could be the righthand lane of three northbound highway lanes, as there was in this case; that a northbound motorist in the same lane observed the parked truck when he is *about a thousand feet away* from it, and to avoid the truck, he immediately turns into the middle lane to his left, and collides with an oncoming vehicle, also travelling north bound in the middle lane. ¶ "Although the truck was illegally parked, I'm saying it was illegally parked in the right hand lane, illegal parking in the right hand lane was not the proximate cause of this accident. A distinction must be drawn between proximate cause and a mere condition. ¶ "In other words between a wrongful act which is at least a contributing cause of an injury, and one which is merely an attendant circumstance or condition * * * ¶ "In this example, the negligence of the driver who changed lanes without first ascertaining that it could be done with safety, superseded the truck's negligence, and was the proximate cause of the accident. ¶ "*It is obvious that if a man turns out from his lane a thousand feet before*

*there is an obstacle in his path, that even though if the obstacle was not in his path, he would never have to turn out, and therefore there never would have been an accident,* it was not the obstacle which caused the accident, because if the person had complied with the law, in first ascertaining whether he could change lanes with safety, there would not have been an accident, and since he did not do that without looking in my example, did not look, he just turned * * * into another car, so you cannot blame the obstacle, a parked truck a thousand feet away, for whatever injuries people may have sustained, because the parked vehicle was not the proximate cause of the injury." (Emphasis added.) ¶ Except for the repeated reference to "thousand feet away" this hypothetical essentially tracked the alleged facts of this case. In charging in the hypothetical that "the negligence of the driver who changed lanes without first ascertaining that it could be done with safety, superseded the truck's negligence, and was the proximate cause of the accident", the court effectively removed the issue of proximate cause from the jury's consideration. This was error. (*Derdiarian v Felix Contr. Co.,* 51 NY2d 308.) Notwithstanding that the court elsewhere charged the jury as to the various duties imposed on operators of motor vehicles, the charge on proximate cause and the use of the quoted hypothetical was tantamount to a direction of a verdict against the plaintiffs and thus was highly prejudicial to the plaintiffs. "As a general rule, the question of proximate cause is to be decided by the finder of fact, aided by appropriate instructions". (*Derdiarian v Felix Contr. Co., supra,* at p 312.) Here, as in *Derdiarian,* "[t]here is no basis * * * for concluding as a matter of law, that a superseding cause or other factor intervened to break the nexus between defendants' negligence and plaintiff's injury" (*ibid.*). ¶ Such error standing alone, would warrant a new trial. The error was compounded, however, by the court's charge in respect to the law as to emergency situations. After defining the standard by which one's conduct is to be judged in an emergency situation, the court recited Gonzalez's testimony as to how his truck came to be stopped on the highway and as to what he did in respect thereto. The court then declared "now that is an emergency", no doubt inadvertently but no less clearly, conveying to the jury that Gonzalez's view of the events was to be accepted, despite the sharp conflict between his testimony and that of Doolittle and Speredakos, neither of whom said they saw any flashing lights or other warning signals. ¶ And while the court expanded its discussion of the emergency doctrine to partially embrace Doolittle's testimony as to his actions when he realized the truck was stopped, the court's statement in the hypothetical example that the "parked" truck was first seen by the bus driver when the bus was 1,000 feet away, whereupon the bus driver "to avoid the truck * * * immediately turns into the middle lane", and its marshaling of the evidence slanted the explanation of the emergency doctrine to the degree that the jury may have felt compelled to return a verdict finding that only Doolittle was negligent and that his negligence was the sole cause of the accident. ¶ Since we are ordering a new trial, we note that subdivision c of section 755(4)-2.0 of the New York City Administrative Code and subdivision (a) of section 1129 of the Vehicle and Traffic Law are of questionable relevance to the issues involved in the lawsuit. To charge subdivision c of section 755(4)-2.0 of the Administrative Code and then instruct the jury that it was not violated by Gonzalez's leaving the truck stalled in the roadway for 10 minutes tended to create the impression that Gonzalez was thus absolved of any negligence in connection with this accident. In charging subdivision (a) of section 1129, commonly known as the "tailgating statute", the court "introduced an issue of tailgating, which was not supported by the evidence adduced." (*Dagim v Schein,* 43 AD2d 832.) The unchallenged evidence here is that the defendant's truck was stopped for at least 8 to 10 minutes prior to the

accident and there is no evidence to support a hypothesis that Doolittle was "following too close", i.e., "tailgating". Concur — Carro, J. P., Asch, Bloom, Kassal and Alexander, JJ.