■ GEORGE J. MORRISON, Individually and as Executor of MAUREEN P. MORRISON, Deceased, Respondent, v RALPH H. HINDLEY et al., Defendants, and COMMUNITY GENERAL HOSPITAL OF SULLIVAN COUNTY et al., Appellants. [633 NYS2d 234] —White, J. Appeal from an order of the Supreme Court (Torraca, J.), entered December 29, 1993 in Sullivan County, which denied motions by defendants Paul G. Jones, Alan A. Greenbaum and Community General Hospital of Sullivan County for, *inter alia*, summary judgment dismissing the complaint against them.

The issue on this appeal is whether Supreme Court properly denied motions by defendants Paul G. Jones, Alan A. Greenbaum and Community General Hospital of Sullivan County (hereinafter the Hospital) for summary judgment in this action for conscious pain and suffering and wrongful death predicated upon defendants' alleged medical malpractice.

The record shows that, following an automobile accident in which she sustained a fractured right hip, Maureen P. Morrison was admitted on May 19, 1988 to the Hospital. After Greenbaum, her personal physician, cleared her for surgery, Jones, on May 20, 1988, performed an open reduction with internal fixation using a hip compression screw. Morrison tolerated the procedure well and was returned to her room. The entries on the nurses' notes indicate that at 12:00 A.M. on May 23, 1988 Morrison was experiencing periods of confusion and that at 2:45 A.M. she was found lying on the floor in her room in a confused state. She was assisted back into bed with an abrasion on her right elbow, the only apparent sign of injury. X rays of the hip were not taken following this incident because, according to the movants, Morrison made no complaint of hip pain. In any event, when she was discharged on June 24, 1988, Morrison was able to ambulate, pain free, for a distance of more than 100 feet.

When Morrison was next seen at the Hospital on July 7, 1988, she reported that she had fallen at home the previous week. X rays of her right hip revealed an impaction of the fracture and the screw appeared to be just under, if not through, the femoral head. To alleviate the pain she was experiencing, the pin and plate were removed from her right hip in an operative procedure performed by Jones on August 16, 1988. Morrison was discharged from the Hospital on September 10, 1988, but readmitted on November 11, 1988 due to a suspected transient ischemic attack. Following her discharge on November 22, 1988, Morrison had no further contact with these defendants. Thereafter, despite Jones' advice not to undergo further surgical treatment, Morrison underwent a right hip hemiarthroplasty performed by Robert Selby on December 16, 1988 at St. Vincent's Hospital and Medical Center of New York. Unfortunately, at the conclusion of that operation, Morrison had a fatal heart attack.

To obtain summary judgment on these facts, defendants had the initial burden of coming forward with admissible evidence showing that their treatment of Morrison comported with acceptable medical standards (see, Alvarez v Prospect Hosp., 68 NY2d 320, 324). If they satisfied this obligation the burden shifted to plaintiff, who was required to demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action (see, Zuckerman v City of New York, 49 NY2d 557, 560).

In support of their motion, Greenbaum and Jones (hereinafter collectively referred to as the doctors) submitted the recom-

mendation of the medical malpractice panel that they be found not liable for malpractice, excerpts from their pretrial depositions and two unsigned affidavits by experts from which their names were redacted. In our view, this proof did not satisfy the doctors' burden since the recommendation of the medical malpractice panel did not, as a matter of law, establish that they did not commit malpractice (*see, Gross v Friedman,* 73 NY2d 721, 722; *see also,* Judiciary Law former § 148-a [8]). Further, the unsigned experts' affidavits lacked probative value (*see, Slavenburg Corp. v Opus Apparel,* 53 NY2d 799, 801; *Majestic Farms Supply v Surowiec,* 160 AD2d 777, 779). On this point, we note that there is no support in the record for the doctors' contention that unredacted and signed affidavits were submitted to Supreme Court. Accordingly, we conclude that Supreme Court properly denied the doctors' motion for summary judgment.

Turning to the Hospital's cross motion, it is well established that hospitals have an independent duty to take reasonable care and supervise their patients to prevent them from being injured or injuring themselves (*see, Kadyszewski v Ellis Hosp. Assn.,* 192 AD2d 765; *Freeman v St. Clare's Hosp. & Health Ctr.,* 156 AD2d 300; *Papa v Brunswick Gen. Hosp.,* 132 AD2d 601, 603). Plaintiff contends that the Hospital breached this duty by not restraining Morrison, which would have prevented her fall and obviated the subsequent surgical procedures which, he alleges, led to her death.

To show that this allegation lacks merit, the Hospital submitted the recommendation of the medical malpractice panel of no liability and an affidavit by an expert who opined that there were no medical indications that it was necessary to restrain Morrison before her fall. He further opined that there is "absolutely" no indication of any injury to the hip resulting from the May 23, 1988 fall, pointing out that Morrison made no complaints of hip pain.

In opposition, plaintiff submitted his expert's sworn opinion that Morrison should have been restrained prior to the fall as she was suffering from confusion and disorientation. Plaintiff also furnished the pretrial deposition of Morrison's daughter, who testified that after the fall Morrison complained of constant pain in her hip.

As no X ray of Morrison's hip was taken following the May 23, 1988 fall, and as the experts' opinions are based upon their interpretation of the Hospital record, the resolution of the key issue of whether she injured her hip in the fall, along with the issue of whether she should have been restrained, will in large

measure depend upon the assessment of the credibility of the parties' expert witnesses, an issue outside the scope of a motion for summary judgment (see, Roundpoint v V.N.A., Inc., 207 AD2d 123, 126). Thus, we agree with Supreme Court that the Hospital was not entitled to summary judgment.

Defendants further argue that the wrongful death causes of action should be dismissed because Morrison's decision, against medical advice, to have the hip replacement operation constitutes an intervening act that severed the causal connection between their alleged malpractice and her death. An intervening act may be a superseding act which breaks the causal nexus if it is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct (see, Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315).

In our opinion, Morrison's decision cannot, as a matter of law, be deemed an intervening act as there is a factual question regarding whether it could be reasonably expected that Morrison, faced with severe limitations on her mobility, would elect to undergo the hip operation against her former doctor's advice (see, Lynch v Bay Ridge Obstetrical & Gynecological Assocs., 72 NY2d 632, 636). Another factor militating against defendants' argument is that Morrison's decision flowed directly from their alleged malpractice (see, supra, at 636, 637).

For these reasons, we affirm Supreme Court's order.

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, with costs.