OPINION OF THE COURT
Stephen A. Bucaria, J.
In this personal injury action, the defendant manufacturer (Yamaha Motor Co., Ltd.) and national distributor (Yamaha Motor Corporation U.S.A., Inc.) (collectively Yamaha) move for summary judgment. The defendant dealership (Two Wheel Corporation doing business as Yamaha Suzuki of Mineóla [Two Wheel]) cross-moves for similar relief. Plaintiffs oppose these motions and cross-move for summary judgment on the issue of liability. All such motions are opposed by defendant John Fiorentino. For the reasons that follow, summary judgment is granted as to the Yamaha defendants, and all other motions are denied.
This action arose from a collision between plaintiff Daniel Beninati and defendant Fiorentino on September 28, 1989. At that time, the 13-year-old plaintiff was operating a Yamaha YFS200U Blaster Moto-4 all-terrain vehicle (ATV) on a public, paved road in South Farmingdale, when he skidded through a stop sign into an intersection and was struck by a van operated by Fiorentino. Plaintiffs grandfather purchased the ATV for the plaintiff in November 1988 at the Two Wheel’s dealership. At the time of purchase, the infant plaintiff was 12 years old. The ATV in question had an engine displacement of 195 cubic centimeters.
*943 Plaintiffs seek to hold the Yamaha defendants liable on the theory that they had a duty to use their “best efforts” to ensure that their authorized dealer, defendant Two Wheel, was complying with a consent decree to which Yamaha was a party, and that Yamaha breached that duty as evidenced by Two Wheel’s sale of the subject ATV for plaintiff’s use. (Galluzzi affirmation in opposition to Yamaha’s motion [Galluzzi Opp.] 53.) Plaintiffs contend that the negligent acts and omissions of both defendants “placed a defective and dangerous instrumentality in the hands of a 12 year old child and were the substantial cause of the events which led to Daniel Beninati’s injuries.” (Id. ]| 18.)
As a general rule, the question of proximate cause is to be decided by the finder of fact once the court has determined that plaintiff has established a prima facie case of negligence. (Derdiarian v Felix Contr. Corp., 51 NY2d 308.) “To carry the burden of proving a prima facie case, the plaintiff must generally show that the defendant’s negligence was a substantial cause of the events which produced the injury”. (Supra, at 315.) Even when plaintiff succeeds in satisfying this burden, where the record supports a finding that a superseding cause or other factor intervened to break the nexus between defendant’s negligence and plaintiffs injuries, summary judgment may be appropriate. (Supra; Howard v Poseidon Pools, 72 NY2d 972.) “Those cases generally involve independent intervening acts which operate upon but do not flow from the original negligence.” (Derdiarian v Felix Contr. Corp., supra, at 315.) Such is the present case.
All sides concede that at the time plaintiffs grandfather purchased the ATV, Yamaha was a party to a consent decree with the United States Department of Justice entered on April 28, 1988 which required it to use its “best efforts” to ensure that the terms of the decree would be carried out by its dealers. (Galluzzi Opp., exhibit C, § B [2].) Among the terms of the decree were provisions setting forth age-of-user/size-of-ATV restrictions. The relevant provisions required the parties to “represent affirmatively’ that ATVs with engine displacements of 70 cubic centimeters (cc) to 90 cc be used only by those aged 12 and older, and that ATVs with engines greater than 90 cc be used only by those ages 16 and older. (Id., exhibit C, § G.) The manufacturers were to use their “best efforts to reasonably assure” that ATVs were not purchased by or for the use of any person under the minimum ages set forth above. (Ibid.)
There is no dispute that Yamaha provided the warnings required by the consent decree to its dealerships and that Two *944 Wheel received said warnings. William Ruggiero, the salesman who sold the subject vehicle, testified that at the time of the subject sale in November 1988, safety videos were available to customers and potential customers and played continuously on monitors throughout the shop. Safety literature was also available to ATV customers. Said materials were provided to the dealership by Yamaha in accordance with the consent decree. As Yamaha explained to its dealers in a letter dated January 19, 1988: “[T]he decree requires that you stress to your customers that ATVs are not toys and that riding them is different from riding motorcycles or other motorized vehicles * * * [T]he decree requires that you impress upon the customers the importance of the safety warnings contained on labels and in the manuals * * * [I] t is the policy of this company to ensure that ATVs are properly matched to their riders. We expect you to carry out that policy. That means strict adherence to the age recommendations for our various models * * * Finally, the decree requires that no authorized dealer may complete a sale to a customer unless both the customer and the dealer have signed a statement verifying that the dealer has made the consumer aware of the age restrictions for the vehicle being purchased and pertinent safety warnings.” (Kitzes affidavit, exhibit K.)
There is no dispute that the infant plaintiff saw said warnings and cautionary literature while at the dealership — in poster form, flyer form and as stickers and hang tags on the actual vehicle. There is no dispute that Daniel’s mother and grandfather reviewed the ATV safety verification form with the owner of the dealership upon delivery of the ATV. The ATV safety verification form required the purchaser to acknowledge 12 warnings, the first of which reads: “never allow a child UNDER 12 YEARS OLD TO DRIVE A 70CC OR LARGER ATV. NEVER ALLOW A CHILD UNDER 16 YEARS OLD TO DRIVE A 90CC OR LARGER atv.” Donna Beninati’s initials appear next to each warning. The signatures of Donna Beninati and Salvatore Beninati, plaintiff’s grandfather, also appear under the statement “I understand all of the above warnings and that failure to obey these warnings could result in death or severe bodily injury.” (Littleton reply to Two Wheel’s opposition, exhibit E.)
It appears from all of the above evidence that Yamaha acted reasonably to ensure compliance with the consent decree, even if those with access to this important information chose to ignore its dire warnings — Two Wheel by selling an oversized ATV for use by a minor, and plaintiff by operating same de *945 spite the warnings. With regard to the dealership, it is significant that correspondence from Yamaha dated December 13, 1988 (less than a month after the subject sale), warned dealers that the United States Consumer Products Safety Commission (CPSC) was conducting anonymous visits to ATV dealers to monitor compliance. Yamaha took that opportunity to remind its dealers to “strictly adhere to the age recommendation for our various models”, and further warned that “all dealers are responsible for seeing that their sales force fully complies with the age recommendations.” The correspondence stated that the CPSC and Yamaha “will continue to monitor dealerships for compliance with all aspects of the final consent decree”, and that “‘spot’ and other undercover inspections will be conducted.” (Kitzes affidavit, exhibit L.) Lastly, the letter stated that “Yamaha is prepared to take whatever steps are necessary to bring all of its dealerships into compliance — including termination proceedings.” (Ibid.)
Based on the evidence presented, this court must agree with the Federal court that retained jurisdiction over the parties to the consent decree. That court concluded in 1992 that “the provisions of the Decree have been implemented in a manner consistent with the judgment.” (United States v American Honda Motor Co., 143 FRD 1, 2.) In light of the above, it does not appear that any alleged negligence on the part of Yamaha at the time of sale (just seven months after the consent decree became final) was a substantial cause of the injuries that befell Daniel Beninati. As such, plaintiffs have failed to establish a prima facie case against the Yamaha defendants. This is so despite the affidavit testimony of plaintiffs’ expert, William Kitzes. His opinion that the Yamaha defendants were “aware of their own failure to prevent such sale by their own dealers in light of their clear obligation under the Consent Decree” is conclusory and unsupported by the evidence. (Kitzes affidavit 17.)
Even if plaintiffs had demonstrated that the failure of the Yamaha defendants to use their “best efforts” to ensure Two Wheel’s compliance with the consent decree was a substantial cause of Daniel Beninati’s injuries, summary judgment would still be appropriate since the dealership’s actions, coupled with that of the plaintiffs, were superseding intervening causes of said injuries. “If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant’s conduct, it may well be a superseding act which breaks the causal nexus”. (Derdiarian v Felix Contr. Corp., 51 *946 NY2d 308, 315, supra.) Moreover, questions of what is foreseeable, normal or independent under the circumstances may be decided as a matter of law where only one conclusion may be drawn from the established facts. (Supra; Howard v Poseidon Pools, 72 NY2d 972, supra; Boltax v Joy Day Camp, 67 NY2d 617; George v Rebbe Excavating & Equip. Co., 236 AD2d 442.) Again, this is such a case.
Here, the evidence supports the conclusion that the Two Wheel dealership was aware of the provisions of the consent decree and did not strictly adhere to Yamaha’s prohibition against the sale of oversized ATVs for use by a minor. It is both illogical and unforeseeable on Yamaha’s part that Two Wheel would risk termination of its dealership agreement, and liability of the sort involved here, by violating the provisions of the consent decree. Yet this is the reckless course the dealership pursued in selling an ATV with a 195 cc engine for use by a minor, fully aware of the minor’s inability to reach the controls necessary to operate the vehicle. Yamaha cannot be charged with this negligence.
Likewise, the actions of plaintiffs break any causal nexus attributable to the Yamaha defendants. As stated above, plaintiff’s mother consented to the sale. She initialed and signed the manufacturer’s warnings about the proper use of ATVs, and acknowledged the potential for death or severe injury that could result from a failure to heed such warnings. Despite her displeasure with the purchase of the ATV, and her awareness of the dangers presented by the underage operation of such a vehicle, Ms. Beninati did little more than inform Daniel that it was illegal for him to operate the ATV on public roads. She never forbade operation of the vehicle or otherwise imposed specific rules for its use.
Moreover, Daniel testified that he was aware of the age restrictions on larger ATVs prior to purchase. He admits seeing similar warnings on display at the dealership. He admits having received operational literature about the subject vehicle, including the Blaster ATV owner’s manual, a pamphlet entitled “ATVs: Information for Owners and Drivers”, a pamphlet entitled “Tips for the ATV Rider”, and a supplemental owner’s manual. He acknowledges having read this literature before the accident, and specifically recalls the repeated warnings about underage operation of ATVs and the dangers of operating the vehicle on paved streets. He also acknowledges having read the warning stickers that were on the vehicle upon delivery which reiterated these dangers.
*947 Despite all of the warnings known to plaintiff and his mother, Daniel chose to operate the vehicle on a public road on the night in question. He was not licensed to drive a motor vehicle on public roadways. He had never operated the ATV at night and was unfamiliar with the location of stop signs on the roadway. As he approached the intersection in question, he realized there was a stop sign in his direction of travel. He applied his brakes too late to stop and skidded into the intersection where the ATV came to rest before being struck by the van.
Only one conclusion can be drawn from these established facts — that the independent intervening acts of Two Wheel in providing Daniel with an oversized ATV, coupled with Donna Beninati’s consent to her son’s use of the vehicle, and Daniel’s reckless actions on the night of the accident, severed any causal connection attributable to the Yamaha defendants. These intervening acts were unforeseeable and simply do not flow from any alleged negligence on the part of Yamaha. Accordingly, the Yamaha defendants are entitled to summary judgment. (Howard v Poseidon Pools, supra; Boltax v Joy Day Camp, supra; George v Rebbe Excavating & Equip. Co., supra.) The court has considered the arguments raised by defendants Two Wheel and Fiorentino in opposing Yamaha’s summary judgment motion and finds these arguments unpersuasive.
In reaching this conclusion, the court is well aware that its role in considering summary judgment motions is one of issue finding, not issue determination. (Kriz v Schum, 75 NY2d 25.) Nevertheless, plaintiffs in a negligence action must establish a prima facie case of proximate causation to defeat a summary judgment motion. (Supra.) The plaintiffs at bar have failed to satisfy this burden as to the Yamaha defendants, but have succeeded in establishing a prima facie case against the remaining defendants. A question of fact exists as to the degree of liability attributable to each of the remaining parties, precluding all other motions for summary judgment.
The action against the remaining defendants is severed and continued.