■ Lewis Kovit et al., Respondents, v Estate of Katherine Hallums et al., Respondents, and City of New York, Appellant. [690 NYS2d 82] —In an action to recover damages for personal injuries, the defendant City of New York appeals from a judgment of the Supreme Court, Kings County (Rappaport, J.), dated April 8, 1996, which, upon a jury verdict on the issue of liability finding it 100% at fault in the happening of the accident and upon a jury verdict on the issue of damages awarding the plaintiff Lewis Kovit the sum of $10,355,720 and the plaintiff Marie Kovit the sum of $200,000, and upon denying its motion pursuant to CPLR 4404 to set aside the verdict, is in favor of the plaintiffs and against it.

Ordered that the judgment is reversed, on the law and the facts, and a new trial is granted as to both liability and damages, with costs to abide the event.

The decedent of the defendant estate (hereinafter the decedent) was driving her vehicle when it collided with a vehicle owned by the New York City Health and Hospitals Corporation (hereinafter HHC). The occupants of the HHC vehicle, who were in radio contact with a nearby HHC hospital, advised HHC employees of the accident. The plaintiff Lewis Kovit, an HHC employee, later came to the scene of the accident, along with several New York City police officers. At some point, the decedent, in response to the command she had received from one of the responding police officers, and with the apparent purpose of clearing the intersection, backed up her car in such a way as to pin Kovit against a van driven by the defendant John Feliciano, who had entered the intersection while driving his van. This accident resulted in serious injuries, which ultimately necessitated an above-the-knee amputation of Kovit's right leg.

The verdict on liability rendered by the jury found that the City of New York (hereinafter the appellant) was 100% at fault in the happening of the accident. This conclusion was apparently based on the theory that the police officer who directed

the decedent to move her vehicle did so in negligent disregard of the circumstances which prevailed in the aftermath of the initial collision. Although the jury concluded that the decedent was, in fact, also negligent, the jury found that the decedent's negligence was not a proximate cause of the accident. We agree with the appellant that this verdict is against the weight of the evidence.

In a case involving injuries caused to a pedestrian as the result of contact with an automobile, it is logically inconsistent to find that the established negligence of the person at the wheel of the automobile in question had no causal relationship with respect to the plaintiff's injuries, while the established negligence of a third person, who directed the driver to move the vehicle, did have such a causal relationship. While the attribution of negligence to both of these parties may be reasonable, we see no valid basis upon which the jury could have concluded that the negligence of the officer, but not the negligence of the driver, was a substantial factor in causing the accident. Indeed, regardless of the fact that the decedent may have moved her car in response to the officer's commands, she remained the sole operator of the vehicle which struck Kovit. This was not a situation where an intervening action occurred so as to render the decedent's operation of her vehicle a less significant cause of Kovit's injuries (*see generally, Derdiarian v Felix Constr. Corp.,* 51 NY2d 308; *Root v Feldman,* 185 AD2d 409). The police officer directed the decedent to move her car, she did so negligently, and Kovit was thereby injured. Under these circumstances, the issues of negligence and proximate cause are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause (*see, Pimpinella v McSwegan,* 213 AD2d 232; *Petioni v Grisi,* 155 AD2d 366; *see also, Hernandez v Baron,* 248 AD2d 440; *Schaefer v Guddemi,* 182 AD2d 808).

Accordingly, based upon all of the facts and circumstances revealed in the record of trial, we conclude that the jury's verdict on the issue of liability is against the weight of the evidence (*see generally, Nicastro v Park,* 113 AD2d 129).

The remaining issues raised on appeal are academic in light of the foregoing determination. Bracken, J. P., Santucci and Florio, JJ., concur.

Friedmann, J., concurs in part and dissents in part and votes to reverse the judgment and order a new trial on the issue of damages only with the following memorandum: It is well established that where an apparently inconsistent or illogical verdict can be reconciled with a reasonable view of the evi-

dence, the successful party is entitled to the presumption that the jury adopted that view (see, Koopersmith v General Motors Corp., 63 AD2d 1013, 1014; Fitzsimmons v Wilder Mfg. Co., 53 AD2d 743; 8 Carmody-Wait 2d, NY Prac § 58:19). An allegation that a verdict is inconsistent or irreconcilable must be reviewed in the context of the court's charge (see, Lundgren v McColgin, 96 AD2d 706). When these rules are applied to the instant case, I believe it is clear that the jury reasonably could have found that the decedent, Katherine Hallums, may have been negligent in the way she moved her car, but that her negligence was not a substantial factor in causing the accident.

According to the accounts of all of the eyewitnesses, Katherine Hallums was distraught following an earlier collision between her Volkswagen and an HHC security vehicle. Those on the scene after the first accident, described Katherine Hallums as being upset, nervous, and shaking. In her deposition testimony, which was admitted at trial as a result of her death, she described herself as crying and almost hysterical. Indeed, the HHC security officers took her into their vehicle to calm her down. Mrs. Hallums returned to her own badly damaged automobile, where her elderly husband awaited her, at about the same time that the police arrived to take control of the situation. Although it was the evening rush-hour, it is not disputed that the police did not stop other vehicles from traversing the intersection, in consequence of which the defendant Feliciano attempted to maneuver his van through the intersection. As Kovit was walking back to his own parked car, which took him between the Hallums' vehicle and Feliciano's van, one of the police officers repeatedly, and in a loud, authoritative tone of voice, ordered the overwrought Mrs. Hallums to move her disabled vehicle out of the roadway. The police did not warn Kovit to get out of the street, or that Mrs. Hallums was about to move her car. When Mrs. Hallums' engine would not start, the police officer "hollered" at her. Although the fumbling Mrs. Hallums believed that she then put the car in neutral and that it malfunctioned, other onlookers conjectured that she must have put it in reverse, because the vehicle shot backwards, pinning Kovit against the Feliciano van, and crushing his leg.

I note that the court's charge distinguished between negligence and proximate cause, and permitted a finding of fault of from 0% to 100% to be apportioned amongst Hallums, the police officers, Feliciano, and Kovit. The appellant herein did not object to the charge, which in any event was logical, clear, and consistent (cf., Bucich v City of New York, 111 AD2d 646). The

record does not otherwise suggest that the jury, which asked for photos, readbacks, and a repetition of the legal definition of "negligence", was in any way confused (*cf., Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507; *Vera v Bielomatik Corp.,* 199 AD2d 132; *Petioni v Grisi,* 155 AD2d 366). After deliberating, the jury concluded that Mrs. Hallums and the police officers had been negligent, but that only the latter's negligence had caused the accident. As the court thereafter reasoned, the jury could properly have concluded that, although Mrs. Hallums may have been negligent in handling her automobile (e.g., by accidentally putting it in reverse), the accident as a whole had been caused by the negligence of the police officers, who had undertaken to control the original accident scene but had failed to properly do so (*see, e.g., Gross v Napoli,* 216 AD2d 524; *Rubin v Pecoraro,* 141 AD2d 525; *Maze v DiBartolo,* 130 AD2d 720; *see also, Moch Co. v Rensselaer Water Co.,* 247 NY 160, 167). Indeed, on this record, the jury could reasonably have found the elements of the police officers' negligence to include their ordering the agitated Mrs. Hallums to move her damaged vehicle; their failure to keep other automobiles out of the intersection until the area was safely cleared; and their failure to warn pedestrians to get out of the roadway before Mrs. Hallums started her car. In short, as the trial court concluded, the jury's finding of fact and apportionment of fault were fully supported by the evidence.

Contrary to the majority's suggestion, there has heretofore been no judicial rule that when the vehicle of a negligent defendant collides with a plaintiff, the former's negligence *must*, as a matter of law, have constituted a substantial cause of the accident, particularly where, as here, the court's charge permits the jury to distinguish between negligence and proximate cause (*see, e.g., Gross v Napoli, supra,* at 525 [involving a rear-end collision where "(t)he jury could have reasonably concluded that, although the defendant was negligent in the operation of her vehicle, the sole proximate cause of the accident was the plaintiff's abrupt stop in the intersection when the traffic light was green"]; *Rubin v Pecoraro, supra,* at 526-527 [jury could reasonably have found that defendant motorist had been negligent "as to speed, control, looking or not sounding a horn", but that plaintiff solely caused the accident when he "attempted to cross the street between parked cars and, without looking, walked into the right side of the * * * car"]; *see also, Hernandez v Baron,* 248 AD2d 440 [jury finding that defendant was guilty of culpable conduct was not inconsistent with its further determination that his negligence was not a proximate cause of the accident]; *Schaefer v Guddemi,* 182 AD2d 808).

This is not a case where negligence and proximate cause are so inextricably interwoven that it is logically impossible to find the one without also finding the other. *Pimpinella v McSwegan* (213 AD2d 232), for example, relied on by the majority, is distinguishable. In *Pimpinella,* the jury found that the defendant was 100% at fault for the happening of a two-car collision because he tried to pass the plaintiff's vehicle on the right, although the jury also found that the plaintiff had also been negligent. In remitting the matter for a new trial, the Appellate Division, First Department, concluded that the plaintiff's negligence, which according to her own testimony had consisted of making a right turn in front of the defendant without looking in her rearview mirrors, *must* have at least *partially* caused the accident. Here, by contrast, the jury could rationally have found that Mrs. Hallums' negligence, i.e., trying to move her car when she was too agitated to do so, was itself "caused" by the negligently barked order of a police officer and that "the accident" as a whole was entirely attributable to careless police supervision.

To the extent that an incongruity may be said to lurk in the instant verdict, the reason may be found in the current practice of bifurcating personal injury trials, and, principally in deference to the defendants' bar, charging the jury at the conclusion of the trial on liability that a defendant may only be held responsible where his negligence has been a "substantial factor" in bringing about "the accident". That is, trial courts no longer endeavor to explain "proximate cause" to jurors (*see,* PJI 2:70). Rather, and because defendants have argued that they are prejudiced if the jury's attention is prematurely drawn to the plaintiff's injury, the current fashion is to charge at the end of the liability phase that a defendant is only liable if his negligence has been *"a substantial factor* in bringing about *the accident"* (emphasis added), as the court instructed in this case. However, Trial Judges have recently been reporting that juries appear to be reading "substantial factor" as a synonym for percentage of fault. This has resulted in some peculiar verdicts, which can only be explained as arising from the jurors' belief that causality, and therefore fault, is established only when a defendant's negligence has been substantial, i.e., greater than 50%. Conversely, juries seem to be concluding that a degree of negligence falling below 50% is not sufficiently substantial to constitute the proximate cause of the mishap. Although it is not necessary to speculate about what the jury did here, because, as discussed above, its verdict was entirely reasonable under the circumstances, nonetheless it is conceivable that on this set of facts it concluded that where the appel-

lant's negligence exceeded 50% and Mrs. Hallums' negligence did not, only the appellant's conduct was sufficiently substantial to have qualified as a cause of the accident.

In addition, the substitution of the term accident for the term injury in the liability charge has served to dilute the traditional notion that a defendant's negligence must be causally linked to the plaintiff's harm. The tortfeasor's duty, after all, is to avoid causing injury, not to obviate all accidents. It is the risk of *harm* reasonably to be perceived that defines the duty to be obeyed (*see, e.g., Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344). Indeed, if the accident as a whole rather than the plaintiff's injury were the focus of liability in tort law, the defendant in *Palsgraf* would almost certainly have been held responsible. In *Palsgraf,* it was the railroad's two employees who, by negligently pushing a gentleman onto a moving train, caused him to drop a package of fireworks which detonated. The carelessness of the defendant's agents therefore quite directly caused the accident, the chain of events which began with the jostling, the fall of the package, and its explosion, and which concluded with the dislodging of certain scales at the other end of the platform, where Mrs. Palsgraf was standing. However, Justice Cardozo concluded that no duty was breached vis-à-vis Mrs. Palsgraf because it was not foreseeable that *she* would be *injured* by the railroad employees' conduct, which was a "wrong [only] in * * * relation to the holder of the package" (*Palsgraf v Long Is. R. R. Co., supra,* at 341). Here, in contrast, the potential for injury to Kovit, who was standing directly behind Mrs. Hallums' car when the police ordered her to move it, was entirely foreseeable. In addition, in accordance with the charge that they were given, the jurors justifiably found that the conduct of the police was the sole cause of the happening of the accident. However, had they been instructed that the ultimate compensable event is not the accident but the injury, they might have concluded that even a minimal degree of negligence on Mrs. Hallums' part was causally related to Kovit's harm, since, among other things, it was her vehicle that crushed Kovit's leg.

However, as already noted, there is no reason to second-guess the jury in this case because its verdict on liability was rational, and was consistent with the evidence as well as with a clear and logical charge. Accordingly, I would affirm that verdict.