■ ARCHEBALD C. HAUGHTON, JR. et al., Appellants, v T & J ELECTRICAL CORPORATION, Defendant and Third-Party Plaintiff-Respondent, and NIAGARA MOHAWK POWER CORPORATION, Respondent. HUDSON VALLEY COMMUNITY COLLEGE, Third-Party Defendant-Respondent. [765 NYS2d 664] —Peters, J. Appeal from an order of the Supreme Court (Canfield, J.), entered September 24, 2002 in Rensselaer County, which, inter alia, granted defendants' motions for summary judgment dismissing the complaint.

Plaintiff Archebald C. Haughton, Jr. (hereinafter plaintiff), employed by third-party defendant, Hudson Valley Community College (hereinafter HVCC), as a building maintenance worker, was routinely assigned to perform electrical work due to his 28 years of prior work experience in this field. On the morning of July 24, 1997, plaintiff and a coworker were informed that there was a power outage affecting several campus buildings. While proceeding to the building that housed key campus electrical equipment, plaintiff noticed that one of three fuses on the high voltage pole carrying the 13,200 volt feeder line to the campus, a line owned and installed by defendant Niagara Mohawk Power Corporation (hereinafter NiMo), was blown. Upon his arrival at the building, plaintiff conferred with his superior, Eugene Groat, by telephone. Despite knowing that NiMo was already assembling a crew to respond to the power outage, Groat directed plaintiff to open several high voltage switches in order to cut power to the transformers.

Plaintiff used a key given to him by HVCC to unlock the door to the electrical room. He opened the switches on each of the transformers and unscrewed the panels securing each transformer cabinet. By that time, Groat and HVCC's senior electrician, Charles Bogue, had arrived. Plaintiff was provided with an additional tool to remove both the on/off handle and the screws securing the primary switch gear cover. Plaintiff recalls being urged by Groat to get the power back on before classes commenced. Groat recalls Bogue dismissing the need to call defendant T & J Electrical Corporation, an electrical contractor that had recently performed maintenance work on the switching equipment, choosing instead to "handle it ourselves."

Fully aware that NiMo had not yet arrived to shut off the main electrical feed that led into these cabinets, plaintiff was directed by both Groat and Bogue to begin work, aided only by a flashlight, in the dark and smoky room. Plaintiff began using

a Simpson multimeter, provided by Bogue, to check the fuses. When one of the cabinets contained a notation, written in magic marker by Bogue, that it housed 13,200 volts of electricity, plaintiff refused to check the fuses therein. When plaintiff probed deep inside the next cabinet—the cabinet actually housing the main campus switch gear which received NiMo's 13,200 volt feeder line—he was electrocuted, set on fire and thrown from the cabinet, causing severe and disfiguring injuries.

Plaintiff and his wife, derivatively, commenced this action against NiMo and T & J, alleging that they had breached a duty of care by failing to lock the primary switch gear cabinet and provide appropriate warnings. T & J thereafter commenced a third-party action against HVCC for indemnification. HVCC moved for summary judgment and defendants cross-moved for a dismissal of plaintiffs' claims and any cross claims. Supreme Court granted defendants' motions, thus rendering HVCC's motion moot. On this appeal, plaintiffs contend that there are questions pertaining to defendants' duty of care and whether the breach of that duty was a proximate cause of the accident.

Although ordinarily a question of fact, proximate cause can be determined, as a matter of law, where "the evidence conclusively establishes that there was an intervening act which was so extraordinary or far removed from the defendant's conduct as to be unforeseeable" (*Meseck v General Elec. Co.,* 195 AD2d 798, 800 [1993]; *see Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315 [1980]; *Feeley v Citizens Telecom. Co. of N.Y.,* 298 AD2d 745, 746 [2002]; *Decker v Forenta LP,* 290 AD2d 925, 926 [2002]). Assuming, without deciding, that defendants owed and breached a duty of care to plaintiff, we conclude, upon these facts, that the conduct of Groat, Bogue and plaintiff together constituted an extraordinary intervening act as a matter of law. In reaching this conclusion, we recognize that plaintiff was not a licensed electrician. However, he described his 28 years of experience with a prior employer where he received promotions which led him from a starting grade electrician to a specialized electrician working with 42,000 volt equipment and control circuits. While there, he engaged in ongoing Occupational Safety and Health Act training and had biyearly refresher courses on the proper use of safety equipment. He adamantly testified that he would never work on high voltage equipment without using the full panoply of protective gear and detailed the curriculum of the year-long course he successfully completed on the National Electric

Code.* Plaintiff further stated that he was aware that the equipment at HVCC was high voltage and had even warned his coworker about its danger; plaintiff could not explain his failure to either obtain or insist on being provided with protective equipment. He further admitted that although he was unfamiliar with the Simpson multimeter provided by Bogue, he nonetheless acquiesced in the directive to use the equipment for testing.

In our view, Groat as the supervisor, Bogue as the senior electrician, and plaintiff as an experienced worker possessed the requisite skills and awareness of the specific risks involved in the tasks being performed (*cf. Meseck v General Elec. Co., supra* at 800). Their conduct constituted an unforeseeable intervening act, sufficient to break the causal chain, thus absolving defendants of any claimed liability (*see Egan v A.J. Constr. Corp.,* 94 NY2d 839, 841 [1999]; *Derdiarian v Felix Contr. Corp., supra* at 308, 315; *Nikolaus v State of New York,* 129 AD2d 865, 866 [1987], *appeal dismissed* 70 NY2d 728 [1987], *lv denied* 70 NY2d 616 [1988]). For these reasons, we find the determination rendered to be proper.

Rose, J., concurs.

Mugglin, J. (concurring). While we concur in the result reached by the majority affirming dismissal of this complaint, we do so on a separate basis. On this appeal, plaintiffs assert that defendant Niagara Mohawk Power Corporation (hereinafter NiMo) and defendant T & J Electrical Corporation breached a duty of care owed plaintiff Archebald C. Haughton, Jr. (hereinafter plaintiff) by failing to padlock the main switchgear cabinet and by failing to place an adequate warning sign on the exterior of the cabinet. With respect to T & J, we agree with the observation of the dissenter that the facts fail to establish a triable issue with regard to any breach of duty on the part of this defendant. With respect to NiMo, it is our conclusion that neither the National Electric Code (hereinafter NEC) nor the common law of this state imposes the duties relied on by plaintiffs in their claim against this defendant.

First, it is undisputed by plaintiff that the electrical equipment that he was working on was owned by his employer, third-party defendant, Hudson Valley Community College (hereinafter HVCC), not NiMo. The three lateral underground conductors from the utility pole outside the building to the HVCC transformers were NiMo property and under its exclusive control. The NEC does not apply to "installations,

---

* He has since purchased the code book yearly to monitor his compliance.

including associated lighting, under the exclusive control of electric utilities for the purpose of * * * transmission * * * of electrical energy" (NEC 90-2 [b] [5]). Moreover, NEC 110-34 (c), as relied on by plaintiffs, is not applicable because NEC 110-30 states, "In no case shall the provisions of this part, apply to equipment on the supply side of the service point." As NiMo's only equipment was on the supply side of the service point, it is our view that the provisions of the NEC relied on by plaintiffs apply only to HVCC, plaintiff's employer.

It is our further view that the common law of this state imposes no duty on the public utility to padlock or place warning signs on equipment owned by a third party. The New York cases cited in the dissent impose liability where persons other than electricians *accidentally* come into contact with wires *owned* by the utility company. Here, in stark contrast, a trained electrician intentionally accessed his own employer's equipment and was injured. Thus, we would hold that, by reason of its nonownership of the equipment, NiMo owed no duty of care to this plaintiff to either padlock the employer's cabinet or to place a warning sign on it.

Crew III, J.P., concurs.

Lahtinen, J. (concurring in part and dissenting in part). I respectfully dissent from that part of the decision that upholds summary dismissal of the action against defendant Niagara Mohawk Power Corporation (hereinafter NiMo). Plaintiff Archebald C. Haughton, Jr. (hereinafter plaintiff), an employee of third-party defendant, Hudson Valley Community College (hereinafter HVCC), was electrocuted, suffering severe disfiguring injuries, while working at HVCC on the morning of July 24, 1997. The basement of Marvin Library on the campus of HVCC is a place where electricity sold by NiMo to HVCC is delivered via a 13,200-volt power line. The high voltage line enters from underground into the electrical switchgear. The switchgear is housed in a series of connected cabinets. The primary switchgear cabinet is where the power enters the facility and the switchgear in the successive cabinets step down the voltage and distribute the electricity to the college campus. The power in these successive cabinets can be shut off by opening the switches. The power to the primary cabinet, however, remains active even when the switch is open because it can only be de-energized by NiMo shutting it off at the power pole.

Working in the basement with flashlights, plaintiff and other employees of HVCC opened the switches in the five cabinets and plaintiff began testing the units with a Simpson multimeter. When plaintiff came to the third cabinet, he saw

"13,200 volts" written in magic marker and refused to test it, ostensibly thinking it was the primary cabinet. Unfortunately, it was not the primary cabinet and when he attempted to test another cabinet, this tragic accident occurred.

Although the facts before the Court fail to establish a triable issue regarding a breach of a duty owed by defendant T & J Electrical Corporation (a contractor that provided maintenance on the switchgear), I cannot reach a similar conclusion regarding NiMo. It has long been the law that the owner of electrical wires has a duty to exercise reasonable care (*see Miner v Long Is. Light. Co.,* 40 NY2d 372, 379 [1976]; *Bennett v New York & Queens Elec. Light & Power Co.,* 294 NY 334 [1945]; *Caruso v Troy Gas Co.* 153 App Div 431 [1912], *affd* 209 NY 510 [1913]), and "a correspondingly higher duty of care [is] owed as higher voltages are transported" (*Miner v Long Is. Light. Co., supra* at 379). While the primary switchgear cabinet was owned by HVCC, NiMo owned and provided the 13,200-volt line into the cabinet and, significantly, had exclusive control over whether the primary cabinet was energized. Under such circumstances, NiMo had a duty regarding the 13,200-volt line contained in the primary cabinet (*cf. Word v Potomac Elec. Power Co.,* 742 A2d 452 [DC 1999]) and, indeed, NiMo did not assert before Supreme Court that it did not have such a duty.

The standards set forth in national electric codes—while not dispositive—are a relevant consideration in assessing the duty owed by a utility (*see Miner v Long Is. Light. Co., supra; Meseck v General Elec. Co.,* 195 AD2d 798, 799 [1993]). In a detailed affidavit, plaintiffs' expert sets forth provisions of various national codes with which NiMo allegedly failed to comply regarding both warnings on the primary switchgear cabinet and access to such cabinet.[1] While NiMo's expert disputes the applicability of such codes and standards, his contrary contentions give rise to triable issues.

The ground for dismissal asserted by NiMo before Supreme Court was its contention that the alleged superseding negligent acts of plaintiff and his employer constituted the sole proximate cause of the accident.[2] "If the intervening act is extraordinary

---

1. The switchgear cabinet containing NiMo's metering equipment was padlocked by NiMo preventing access to that cabinet by anyone other than NiMo personnel. Additionally, a red sticker threatening criminal prosecution to anyone who tampered with that equipment was affixed to that cabinet by NiMo. NiMo did not install a padlock nor affix any similar type warning to the primary switchgear cabinet.

2. It merits noting that the advent of comparative negligence has eroded some of the traditional rationales undergirding intervening acts and super-

under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980] [citations omitted]). Such determinations are generally "for the fact finder to resolve" unless "only one conclusion may be drawn from the established facts" (*id.* at 315; *see Bell v Board of Educ. of City of N.Y.*, 90 NY2d 944, 946 [1997]). An example of an unforeseen superseding event as a matter of law includes an adult recklessly diving into shallow water when the person was fully familiar with the water depths of the particular premises (*see Olsen v Town of Richfield*, 81 NY2d 1024 [1993]; *Boltax v Joy Day Camp*, 67 NY2d 617 [1986]). On the other hand, an individual at a swimming area who dives into unfamiliar water where no warnings are posted, although perhaps guilty of significant comparative negligence, may not necessarily be so reckless as to remove the case from the province of the jury (*see Ziecker v Town of Orchard Park*, 75 NY2d 761 [1989]).

Here, plaintiffs' claim is based, in part, on the lack of proper warnings as to which switchgear cabinet remained energized and the failure to adequately secure the primary switchgear cabinet. Plaintiff did not know prior to the date of the accident which switchgear cabinet was the primary one and, indeed, he refused to work on the one marked "13,200 volts." In light of plaintiff's lack of specific knowledge as to which switchgear was still energized and his contention that there were inadequate warnings, his alleged conduct is more closely in line with *Ziecker v Town of Orchard Park* (*supra*) and does not rise to the level of reckless conduct severing the causal nexus as a matter of law (*see also Kriz v Schum*, 75 NY2d 25, 36 [1989], *affg Denkensohn v Davenport*, 144 AD2d 58 [1989]; *but see Marcheterre v S&C Elec. Co.*, 273 AD2d 880 [2000]). Accordingly, I would reverse so much of the order as granted NiMo's motion for summary judgment.

Ordered that the order is affirmed, with one bill of costs.

seding causes (*see generally* Restatement [Third] of Torts: Liability for Physical Harm [Tent Draft No. 2, Mar. 25, 2002] § 33).