■ EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant-Respondent, v NICO CONSTRUCTION CO., INC., Respondent-Appellant, and EDWARD LARRABEE BARNES ASSOCIATES, P. C., et al., Respondents. NICO CONSTRUCTION CO., INC., Third-Party Plaintiff-Appellant, v NORBERTO & SONS, INC., Third-Party Defendant-Respondent. [666 NYS2d 602] —Judgment, Supreme Court, New York County (Stephen Crane, J.), entered May 15, 1996, which, to the extent appealed from, after setting aside a jury verdict in plaintiff's favor against defendant Weiskopf & Pickworth (W&P), dismissed the underlying breach of contract claim against said defendant and which, as limited by defendant and third-party plaintiff Nico Construction Co., Inc.'s brief, denied Nico's post-trial motion to amend its pleadings to conform to the proof at trial, resulting in the dismissal of its third-party complaint against third-party defendant Norberto & Sons, Inc., unanimously reversed, on the law and on the facts and in the exercise of discretion, with costs and disbursements to appellants, The Equitable Life Assurance Society of the United States and Nico, the jury's verdict on liability on W&P's breach of contract claim reinstated, the motion to amend the pleadings to conform to the proof granted and Nico's third-party complaint as well as the applicable portions of the jury's liability verdicts thereon reinstated.

This action for breach of contract and negligence is an outgrowth of the construction of an Olympic-sized swimming pool for The Equitable Life Assurance Society of the United States on the ground floor of the Equitable Building in New York City. The evidence at trial showed that, although designed to have ten-inch side walls of solid concrete and eight inches at the bottom to contain the 60,000 gallons of water that the pool would hold, the pool, in several places, had only one inch of solid concrete. There was evidence that many such "voids" existed in the swimming pool walls. As a result, there have been a number of leaks over the years, causing damage.

Equitable's case against W&P, the structural engineer for the overall project, focused on W&P's contractual obligation to inspect the work of Nico, the general contractor for the construction of the pool, and Norberto, the subcontractor hired by Nico to construct the pool shell and, specifically, to install gunite, commonly called "shotcrete", a type of concrete used in the installation of the pool's walls and floor. The work was to be performed in accordance with W&P's design and specifications, which were provided to Nico and Norberto. According to the evidence, W&P conducted controlled inspections of the gunite as to two-thirds of the pool. These inspections, as the evidence shows, were designed, *inter alia*, to prevent voids. Although W&P signed forms filed with the New York City Building Department stating that it had assumed responsibility for the inspection of the concrete work and would continuously inspect all phases of the concrete construction, it is uncontroverted that, despite its certification to the contrary, W&P made no inspections in June and July 1987, either at the time the gunite was applied or afterwards. Since W&P was the engineer of record, it was obliged to make the controlled inspections. Equitable's expert, a structural engineer, testified that W&P's design of the spacing of the steel rebars supporting the pool, through which the gunite was shot, varied from the recommendations of the American Concrete Institute. He also testified that the failure to perform the controlled inspections was a cause of the problem and that, if the gunite application were not inspected, voids around the reinforcing steel would likely occur.

The jury found W&P liable in contract for the resultant voids. In its post-trial decision, Trial Term found a failure of proof as to a causal connection between W&P's breach of its contract with respect to controlled inspections and the damage to the shell of the pool. In answer to interrogatory No. 6, the jury found that the proximate cause of the damage to the pool shell

was the failure to make controlled inspections. The IAS Court set aside the verdict against W&P on the ground that such failure was not a reasonably foreseeable cause of the damage caused by the voids in the pool shell. This was error.

The issue of causation was factual in nature. As a general rule, the question of proximate cause is to be decided by the finder of fact, once negligence has been shown. (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315.) Thus, the verdict should stand unless "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial." (*Cohen v Hallmark Cards*, 45 NY2d 493, 499.) Based on the trial evidence, there was a rational basis for the verdict on causation, which need not be based on absolute certitude or exclude every other possible cause of injury. (*Wragge v Lizza Asphalt Constr. Co.*, 17 NY2d 313, 321.) As the record shows, there was testimony directly linking the failure to conduct controlled inspections of the concrete and the substantial number of voids in the pool walls.

Furthermore, it was an abuse of discretion to deny Nico's motion to conform the pleadings to the proof to allege a cause of action against Norberto for breach of contract. Such a motion is addressed to the discretion of the trial court. (*Gonfiantini v Zino*, 184 AD2d 368, 369; *see*, CPLR 3025 [c].) Norberto cannot claim prejudice. The evidence at trial made Norberto fully aware that Nico, whose third-party negligence claim against it for contribution had been dismissed, intended to prove that a contract with Norberto for the work existed. As reflected by the jury's finding that Norberto should bear 90% of the responsibility assigned to Nico, Norberto was mainly responsible for the pool's defects. It was the prime contractor in the pool's construction and, as the evidence shows, had defectively applied the gunite. While Nico's proposed amendment to assert a contractual indemnification claim is more than, as Nico contends, an amendment as to form, the trial evidence clearly warranted the grant of Nico's motion. In view of the grant of this amendment, the corresponding portions of the jury's verdict should be reinstated. Concur—Murphy, P. J., Sullivan, Wallach, Tom and Andrias, JJ.