■ DELVIN SWEENEY, Appellant, v BRUCKNER PLAZA ASSOCI-ATES et al., Respondents, et al., Defendants. [869 NYS2d 453]—

This action was commenced by plaintiff, a quadriplegic, to recover damages for personal injuries sustained as the result of Zerega's towing of plaintiff's customized van from a handicapped space at the parking lot of a shopping center owned and operated by Bruckner. When plaintiff called the police to inform them that his vehicle had been towed, he was instructed to wait at the shopping center. However, plaintiff decided to retrieve the van himself from the yard to which the van had been transported after Zerega's tow truck driver told him that the yard was only two blocks way. Plaintiff claims that as a consequence of retrieving the van he developed pneumonia and suffered tremendous strain on his hands and arms.

Defendants' motion for a directed verdict on the ground that plaintiff failed to make out a prima facie case on his claims for trespass to chattel and negligence was improperly granted. Plaintiff's evidence was sufficient to show that defendants lacked authority to remove plaintiff's vehicle (*see* Administrative Code of City of NY § 19-169.1 [b] [owner or operator of private parking facility prohibited from towing or causing to be towed vehicles from facility unless a sign is conspicuously posted stating, among other things, the name, address and telephone number of the tow operator]), and that the towing of the vehicle was therefore tortious. We disagree with the trial court that, as a matter of law, the towing did not proximately cause plaintiff's injuries, or that plaintiff's decision to retrieve his van was an intervening act that broke the causual nexus between the towing and plaintiff's injuries.

The issue of "[p]roximate cause is a question of fact for the jury where varying inferences are possible." (*Rose v Brown & Williamson Tobacco Corp.*, 53 AD3d 80, 106 [2008] [internal quotation marks omitted].) Violation of the Administrative Code or the Rules of the City of New York constitutes some evidence of negligence (*Cruz v City of New York*, 13 AD3d 254 [2004]). "As a general rule, the question of proximate cause is to be decided by the finder of fact, once negligence has been shown" (*Equitable Life Assur. Socy. of U.S. v Nico Constr. Co.*, 245 AD2d 194, 196 [1997]. In determining proximate cause where there is an intervening act, liability turns on whether the intervening act was a foreseeable consequence of the defendant's negligence, and, as such, is generally a question for the finder of fact (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]).

Defendants contend that plaintiff's retrieval of his vehicle was an intervening act. Whether this was a "normal or foresee-

able consequence of the situation created by the defendant[s'] negligence" (*id.*), however, is a factual issue, especially in light of the requirements of Administrative Code § 19-169.1 (b). It may be foreseeable that a person like plaintiff whose vehicle has been towed, may attempt to retrieve the vehicle, in circumstances like plaintiff was in, particularly when that person is constrained to rely on information provided by the tow operator's driver that the tow yard was only two blocks away, and in the absence of a statutorily required conspicuously posted sign giving, among other things, the address of the tow operator.

A directed verdict is only appropriate where there is no rational process that would lead the trier of fact to find for the nonmoving party (*McDermott v Coffee Beanery, Ltd.*, 9 AD3d 195, 210 [2004]. In considering the motion "the trial court must afford the party opposing the motion every inference which may properly be drawn from the facts presented, and the facts must be considered in a light most favorable to the nonmovant" (*Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]). We do not find it unreasonable as a matter of law for plaintiff to brave the cold for what he thought was only a few blocks, especially since his specialized, unfoldable, motorized wheelchair and his physical condition made it extremely difficult for him to travel in anything other than a customized vehicle. Thus, it cannot be said as a matter of law that plaintiff's actions were so extraordinary as to break the causual nexus between defendants' actions and plaintiffs resultant injuries (*Derdiarian*, 51 NY2d at 315). Concur—Saxe, J.P., Acosta and DeGrasse, JJ.

Catterson and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: I disagree with the majority that Supreme Court erred in granting defendants' separate motions at the close of plaintiff's case for dismissal of the causes of action for trespass to chattel and negligence based on events that occurred on December 23, 1997. Accordingly, I respectfully dissent in part.

On December 23, 1997, plaintiff, his teenage brother and a six-year-old boy (whose legal guardian was plaintiff) drove to a shopping center owned by defendant Bruckner. Plaintiff was a wheelchair-bound quadriplegic who drove his specially-equipped, handicapped accessible van to the shopping center. The van had neither handicapped license plates (*see* Vehicle and Traffic Law § 404-a) nor a government-issued placard (*see* Vehicle and Traffic Law § 1203-a) allowing him to park the van in a parking space designated for vehicles with either of those credentials (*see* Vehicle and Traffic Law § 1203-b [1] ["Parking spaces for

the handicapped shall be those parking spaces according to a holder of a handicapped parking permit provided in accordance with section one thousand two hundred three-a or as provided in section four hundred four-a of this chapter"]). However, at approximately 5:55 P.M., plaintiff parked the van in a parking space designated for vehicles with those credentials.

After plaintiff and his companions exited the store at 6:45 P.M., they returned to the parking lot to find the van missing. The group searched the lot for the van for approximately 15 minutes, but did not find it. At approximately 7:00 P.M., plaintiff, using his cell phone, called "911" to report the van stolen. The police dispatcher plaintiff spoke to told him to wait at the shopping center for police officers to arrive.

Shortly after plaintiff called "911," a woman in the parking lot told plaintiff that his van had been towed and pointed to a tow truck in the lot that the woman believed had towed the van. Plaintiff talked to the driver of the tow truck, who apparently worked for defendant Zerega Recovery Corp.; the driver told plaintiff that he had towed the van and he refused to bring the van back to the shopping center. The tow truck driver, however, indicated to plaintiff that Zerega's storage lot was two blocks from the shopping center. Neither plaintiff nor his brother saw any sign in the parking lot indicating the name, address and telephone number of the tow operator of the lot. Following this conversation with the tow truck driver, plaintiff, at approximately 7:25 P.M., called "911" to inform the police that the van had not been stolen but towed and that he wanted the police to assist him in getting his van back. Again, the police dispatcher told plaintiff to wait at the shopping center for police officers to arrive.

At approximately 7:40 P.M., plaintiff and his companions decided to leave the shopping center and travel on the sidewalks to retrieve the van. Although the temperature was very cold, plaintiff did not have a jacket because he had left it in the van. The distance from the shopping center to Zerega's lot ultimately proved to be, in plaintiff's estimation, approximately 1.2 miles. The sidewalks were, in plaintiff's opinion, "messed up"; the sidewalks had many "bumps, cracks, holes" and other depressions that "[a]ffected [plaintiff] a lot[, caused him a] lot of pain . . . [and made him] very uncomfortable." Plaintiff wheeled himself most of the way between the shopping center and Zerega's lot, but his brother assisted him part of the time. When they reached Zerega's lot, a Zerega employee returned the van to plaintiff without charge.

Plaintiff commenced this action against Bruckner and Zerega

seeking damages under a number of causes of action. Plaintiff claimed that, as a result of his exposure to the elements, the rough trip over the city sidewalks and the physical labor he expended in wheeling himself, he sustained injuries to his hands, wrists and forearms and contracted bronchitis. Plaintiff also asserted claims against Zerega based on an incident that transpired at Zerega's lot the day after the van was towed, i.e., December 24. Supreme Court granted in part and denied in part defendants' separate motions for summary judgment dismissing the complaint, and we affirmed (20 AD3d 371 [2005]). As a result of the orders on the summary judgment motions, plaintiff's causes of action for negligence and trespass to chattel remained. Supreme Court subsequently granted Zerega's motion in limine to preclude plaintiff from presenting evidence regarding his negligence cause of action against Zerega based on events that occurred on December 24, 1997. Plaintiff then proceeded to trial on his negligence claim based on the events of December 23, 1997 and his claim of trespass to chattel.

At trial, plaintiff's negligence cause of action was based on defendants' alleged failure to comply with Administrative Code of the City of New York § 19-169.1 (b), which prohibits the owner or operator of a private parking lot from towing or causing to be towed any vehicle from the lot unless a conspicuously posted sign is present in the lot indicating, among other things, the name, address and phone number of the tow operator of the lot. Plaintiff posited two negligence theories based on that Code provision. The first theory is that defendants were not permitted to tow the van because there was no sign in Bruckner's lot complying with section 19-169.1 (b) and, as a result of the unlawful towing of the van, plaintiff was "forced" to travel to Zerega's lot to retrieve it. The second theory is based on the absence of a sign in Bruckner's lot that, as required by section 19-169.1 (b), stated the address of Zerega's lot and Zerega's telephone number. Because he did not have that information, plaintiff asserts that he was unable either to assess accurately how far Zerega's lot was from the shopping center or to call Zerega and request the return of the van. The absence of the sign, according to plaintiff, "forced [him] to embark on an unknown journey to retrieve" the van, and, as a result of that journey, sustain personal injuries. Under his trespass to chattel cause of action, plaintiff claims that, based on the absence of a sign complying with section 19-169.1 (b), his van was unlawfully towed, he was thus temporarily and unjustifiably deprived of possession of the van, and that the deprivation resulted in the personal injuries he sustained.

At the close of plaintiff's case, defendants separately moved

pursuant to CPLR 4401 to dismiss the claims that went to trial. With respect to the negligence claims, defendants argued that plaintiff's decision to leave the shopping center to retrieve the van was, under the particular circumstances, unforeseeable and that the hazards that actually caused plaintiff's injuries were the bumps, cracks, holes and other depressions in the public sidewalks that he traversed from the shopping center to Zerega's lot. With respect to the trespass to chattel claim, defendants argued that it should be dismissed because the van was not damaged as a result of their conduct. Supreme Court granted the motions. Plaintiff appeals from the judgment that was subsequently entered dismissing the complaint.

A motion for judgment during trial pursuant to CPLR 4401 "is appropriate where the trial court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party" (*Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]). In my view, Supreme Court correctly granted defendants' motion pursuant to CPLR 4401 because, on the evidence adduced during plaintiff's case, there was no rational process by which the jury could have based a finding in favor of plaintiff.* Specifically, plaintiff failed to make a prima facie showing that his injuries were proximately caused by defendants' alleged tortious conduct.

"The concept of proximate cause, or more appropriately legal cause, has proven to be an elusive one, incapable of being precisely defined to cover all situations. This is, in part, because the concept stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct. Depending upon the nature of the case, a variety of factors may be relevant in assessing legal cause. Given the unique nature of the inquiry in each case, it is for the finder of fact to determine legal cause, once the court has been satisfied that a prima facie case has been established. To carry the burden of proving a prima facie case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 314-315 [1980] [citations omitted]). In ascertaining whether a defendant's conduct was a substantial factor in causing the events that produced a plaintiff's injuries,

---

* Contrary to plaintiff's suggestion, our prior affirmance of Supreme Court's order denying in part defendants' separate motions for summary judgment (20 AD3d 371 [2005]) did not preclude the trial court from granting defendants' motions pursuant to CPLR 4401 (*see S.L. Benfica Transp., Inc. v Rainbow Media, Inc.*, 13 AD3d 348 [2004]).

the court must consider (1) the aggregate number of factors involved that contributed to the injuries and the effect that each had in producing those injuries, (2) whether the defendant created a continuous force active up to the time of the injuries, or whether the situation was acted upon by other forces for which the defendant is not responsible, and (3) the lapse of time between the defendant's negligence and the point at which the plaintiff sustained the injuries (*Mack v Altmans Stage Light. Co.*, 98 AD2d 468, 470-471 [1984], citing Restatement [Second] of Torts § 433 and NY PJI 2:70, Comment).

The absence of a sign complying with Administrative Code § 19-169.1 (b) left plaintiff at the shopping center without the name, address and telephone number of the tow operator, Zerega. But the absence of that sign caused no injuries to plaintiff. Plaintiff's injuries were caused by (1) the public sidewalks, which had many "bumps, cracks, holes" and other depressions, that plaintiff traveled over, (2) the physical labor plaintiff exerted in wheeling himself over those public sidewalks, and (3) the cold temperatures to which plaintiff was exposed from the time he exited the store until he entered his van after retrieving it from Zerega's lot. Clearly, defendants did not create a continuous force active up to the time plaintiff sustained his injuries; rather, other forces for which defendants were not responsible caused plaintiff's injuries—the condition of the public sidewalks, plaintiff's exertion of physical labor and the cold weather. Additionally, there was an appreciable lapse of time between defendants' alleged negligence in failing to have in the shopping center parking lot a sign complying with section 19-169.1 (b) and plaintiff's exposure to the forces that directly caused his injuries. Plaintiff exited the store at approximately 6:45 P.M. and did not leave the shopping center until almost one hour later at 7:40 P.M. During that 55-minute period, plaintiff spoke to a police dispatcher twice and on both occasions the dispatcher told plaintiff to wait at the shopping center for police officers to arrive. At bottom, the "immediately effective cause of plaintiff's injuries" was not the alleged negligence of defendants (*Ventricelli v Kinney Sys. Rent A Car*, 45 NY2d 950, 952 [1978]); stated differently, defendants' alleged negligence was not a "direct cause" of plaintiff's injuries (*Martinez v Lazaroff*, 48 NY2d 819, 820 [1979]). Concomitantly, their alleged negligence was not, as a matter of law, a proximate cause of plaintiff's injuries. Indeed, a finding that defendants' alleged negligence was a proximate cause of plaintiff's injuries is inconsistent with the policy considerations underpinning the law of proximate cause "that serve to place manageable limits upon the liability that flows from negligent conduct" (*Derdiarian*, 51 NY2d at 314).

Contrary to plaintiff's assertion, defendants' alleged negligence in failing to have in the shopping center parking lot a sign that complied with section 19-169.1 (b) did not "force" plaintiff to leave the shopping center to retrieve the van. The absence of the sign did nothing more than deprive plaintiff of information regarding the tow operator of the parking lot. Plaintiff left the shopping center on his own accord after being advised twice by the police dispatcher to wait at the shopping center for police officers to arrive and was subsequently exposed to forces over which defendants had no control.

Even assuming that a material issue of fact existed regarding whether defendants' alleged negligence was a substantial factor in causing plaintiff's injury, the negligence cause of action was properly dismissed. When the intervening act of a plaintiff contributes to his injuries, liability can only be imposed on the defendant if the plaintiff's act was a foreseeable consequence of the situation created by the defendant's alleged negligence (*Boltax v Joy Day Camp*, 67 NY2d 617, 619 [1986]; *see Kriz v Schum*, 75 NY2d 25, 36 [1989]). Here, plaintiff, after alerting the police of his predicament and being told to wait at the shopping center for police officers to arrive, left the safety of the shopping center to travel an uncertain distance in his wheelchair over public sidewalks on a cold winter's evening without a jacket. In my view, plaintiff's reaction to the particular situation he was confronted with was unreasonable and thus was not a foreseeable consequence of defendants' failure to post a sign (*see Miecznikowski v Robida*, 278 AD2d 793 [2000], *lv denied* 96 NY2d 709 [2001]).

Instructive on this score is *Chang-Lei Cheng v Metropolitan Transp. Auth.* (213 AD2d 581 [1995]). In *Cheng*, plaintiff's decedent was a passenger on a Long Island Rail Road train heading from New York City to the Town of Huntington. Due to a fire in the wheels of the last car of the train, the train stopped approximately one mile west of the Huntington station. While other passengers waiting for service to be restored remained on the train or outside of the train at the site where it stopped, 50 to 100 of the passengers, including plaintiff's decedent, walked on the tracks to the station. Plaintiff's decedent subsequently suffered a heart attack and died. Plaintiff commenced an action against, among others, the Metropolitan Transportation Authority (MTA), claiming that, as a result of the MTA's alleged negligence in operating and maintaining the train, the decedent walked to the station instead of being dropped off there by the train and, in the course of walking, suffered the heart attack due to the physical exertion of the walk. The Second Depart-

ment affirmed a judgment of Supreme Court dismissing plaintiff's complaint as against the MTA following a nonjury trial. The Court stated that the decedent's heart attack and death were not reasonably foreseeable consequences of the MTA's alleged negligence (213 AD2d at 582).

I appreciate that the question of proximate cause is generally a question of fact for a jury (*see Derdiarian*, 51 NY2d at 312), a point the majority repeatedly stresses. However, where, as here, "the evidence as to the cause of the accident which injured plaintiff is undisputed, the question as to whether any act or omission of the defendant was a proximate cause thereof is one for the court and not for the jury" (*Rivera v City of New York*, 11 NY2d 856, 857 [1962]; *see Sheehan v City of New York*, 40 NY2d 496, 502 [1976]). In my view, the evidence at trial regarding the cause of plaintiff's injuries was clear. Plaintiff's injuries were caused by: (1) the particular condition of the public sidewalks that plaintiff traveled over, (2) the physical labor plaintiff exerted in wheeling himself over those public sidewalks, and (3) the cold temperatures to which plaintiff was exposed because of his decision to retrieve the van from Zerega's lot and because he was not wearing a jacket. Thus, the question of whether defendants' alleged negligence was a proximate cause of plaintiff's injuries was properly resolved as a matter of law by Supreme Court.

With respect to the cause of action for trespass to chattel, defendants raise an interesting issue—whether a plaintiff may recover damages for personal injuries under that cause of action. To be sure, plaintiff does not seek to recover for property damage, i.e., damage to the van, under his cause of action for trespass to chattel; rather, plaintiff seeks to recover damages for personal injuries he sustained as a result of his trip from the shopping center to Zerega's lot to retrieve the van.

To recover damages under a cause of action for trespass to chattel, a plaintiff must demonstrate that he or she sustained an "actual injury" as a result of the defendant's tortious conduct (*see Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 95 [1993]). Generally, the "actual injury" element is satisfied by evidence that the chattel was damaged as a result of the tortious conduct or that the plaintiff was deprived of the use of the chattel for some period of time. Section 218 of the Restatement (Second) of Torts states that "One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if, . . . (d) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest." The comment to section 218 (d) states that

"If the actor has committed a trespass as defined in § 217 [e.g., dispossessing another of a chattel], he is subject to liability to the person in possession of the chattel if he thereby causes bodily harm to the possessor . . . It is immaterial that the harm so caused was neither intended by the actor nor the result of his negligent or reckless conduct while trespassing." (*See also* 1 Dobbs, Torts § 60, at 124-125 [2001].) At least with respect to the types of recoverable damages, the PJI charge on trespass to chattel is consonant with the Restatement. That charge provides that "[a] person who, without justification or consent, intentionally physically interferes with the use and enjoyment of personal property in the possession of another commits a trespass and *is liable for any damage caused by that conduct*" (PJI 3:9 [emphasis added]). The comment to that charge notes that the "[d]amages recoverable are those proximately resulting from the trespass" (2 NY PJI2d 3:9, at 98 [2008]). In light of this authority and the absence of any indication that the law of this State is otherwise, it appears that damages for personal injuries may be recoverable under a cause of action for trespass to chattel.

I need not, however, decide this novel issue. Even assuming that damages for personal injuries are recoverable under a cause of action for trespass to chattel, for the reasons discussed above, plaintiff's injuries did not "proximately result[ ]" from defendants' alleged tortious conduct (2 NY PJI2d 3:9, at 98). Thus, dismissal of the trespass to chattel cause of action was appropriate.

I agree with the majority's tacit conclusion that Supreme Court erred in granting Zerega's pretrial motion in limine to preclude plaintiff from presenting evidence regarding his negligence cause of action against Zerega based on events that occurred on December 24, 1997, the day after the van was towed. In deciding defendants' separate motions for summary judgment dismissing the complaint, Supreme Court denied those aspects of the motions that sought dismissal of the negligence claims, and we affirmed. Thus, plaintiff was entitled to present his case on that claim of negligence. By granting Zerega's pretrial motion in limine to preclude plaintiff from eliciting evidence on that claim, Supreme Court deprived plaintiff of that right.

Accordingly, I would modify the judgment to the extent of reinstating plaintiff's cause of action for negligence against Zerega premised on the December 24, 1997 incident, and otherwise affirm the judgment.